[No. 21650. Department Two. February 26, 1929.]

WOLVERTON AUTO BUS COMPANY, INCORPORATED, *Appellant*, v. JOHN S. ROBINSON, *as Receiver, Respondent.*[1]

[1] Reported in 274 Pac. 1056.

*Cleland & Clifford,* for appellant.

*Robert Bronson* and *Wm. H. Gorham,* for respondent.

PARKER, J.—This is an appeal by the Wolverton Auto Bus Company from a judgment of the superior court for Thurston county, reversing an order of the state department of public works, ordering respondent, John S. Robinson, as receiver of the Sound Ferry Lines, to transport the stages of the Wolverton Auto Bus Company between Port Ludlow and Edmonds, across Puget Sound, for a compensation of one hundred dollars per month, in accordance with a special contract entered into between the Wolverton Company and the Ferry Lines prior to its affairs passing into the hands of Robinson, as receiver.

As we view the right of this controversy, the controlling facts are not in dispute, and may be summarized as follows: During the period in question, the Wolverton Company has operated an auto stage line as a public carrier, under a certificate of public convenience and necessity issued to it by the department of public works, serving the northerly portion of the Olympic peninsula, to and from Port Ludlow, the westerly landing of the route of the Ferry Lines on the

westerly shore of Puget Sound. During the period in question, the Ferry Lines has operated as a public carrier across Puget Sound between Port Ludlow, on the westerly shore, and Richmond, on the easterly shore, of Puget Sound. During the period in question, the Yost Auto Company has operated, as a public carrier, an auto stage line between Edmonds and Seattle, under a certificate of public convenience and necessity issued to it by the department of public works. Neither the Wolverton Company nor the Yost Company had or has any transportation rights as a public carrier over the route of the Ferry Lines, though they, of course, had and have the right to be served, as shippers, by the Ferry Lines, upon payment of the proper tariff rates, the same as any other member of the public. Through passenger rates were duly established over the lines of these three public connecting carriers, and duly apportioned between them, wholly apart from the transportation of the stages of either the Wolverton Company or the Yost Company over the route of the Ferry Lines. Shipping rates were duly established, by tariff effective July 12, 1926, over the route of the Ferry Lines, reading in part as follows:

"TOURING AUTO BUSSES OR STAGES:
"Not over seven passenger capacity, same rate as heavy passenger cars;
"Over seven passenger and not over fifteen passenger capacity, $5.00;
"Over fifteen passenger and not over twenty-five passenger capacity, $8.00;
"Over twenty-five passenger capacity, $10.00."

These rates have never been lawfully changed, unless we must hold that they were effectually and lawfully changed, as between the Wolverton Company and the Ferry Lines, by special contracts thereafter entered into between them, which we shall presently notice.

In the spring of 1927, the Wolverton Company and the Yost Company entered into a contract by which the stages of each should run through, over their entire through-fare route, without requiring their passengers to change from stage to boat, and from boat to stage. This, of course, necessitated payment of a ferry charge for shipping the stages over the route of the Ferry Lines. Instead of complying with the then duly established tariff rates, above quoted, the Wolverton Company and the Ferry Lines entered into a contract in writing, reading as follows:

"March 5, 1927

"AGREEMENT

"In the interest of public convenience, it is hereby mutually agreed between the WOLVERTON AUTO BUS Co. and the SOUND FERRY LINES, INC., that the stages of the WOLVERTON AUTO BUS Co., carrying passengers to the SOUND FERRY LINES, INC., terminal at Port Ludlow, will be carried across on the ferry or ferries operating between Edmonds and Port Ludlow under the following conditions:

"Stages carrying passengers on regular scheduled trips meeting the ferry on its regular scheduled trips will be carried between Edmonds and Port Ludlow or vice versa for $2.50 per round trip. . . .

"This agreement to become effective upon the placing in commission on the Edmonds-Ludlow Route the new ferry now being built for the SOUND FERRY LINES, INC.

"The WOLVERTON AUTO BUS Co. reserves the right to accept or reject this agreement after a sixty day trial over the new ferry and does not bind them to operate all of its trips through from the Peninsula to Seattle, or vice versa.

"This agreement to remain in full force and effect for three years, if the WOLVERTON AUTO BUS Co. accepts it."

Operation commenced and continued under this contract until April 1, 1928, when there became operative

a new oral contract, or an oral modification of that contract, by which the Ferry Lines were to carry the stages of the Wolverton Company for a compensation of one hundred dollars per month, it being understood that there would be three stage round trips per day over the route of the Ferry Lines. On May 9, 1928, respondent, Robinson, was, by the superior court for King county, duly appointed receiver of the Ferry Lines, and, as such, he then took charge of its property and affairs looking to the liquidation of its affairs. On May 17, 1928, Robinson, as receiver, communicated by letter to the Wolverton Company as follows:

"Seattle, May 17, 1928.

"Wolverton Auto Bus Company,
Central Terminal,
Seattle, Washington.

"Gentlemen: Supplementing my letter of May 10th, 1928, I beg leave to say that following your suggestion at a conference here between us and our attorneys on May 11, we took up the matter informally with the department of public works. After a full discussion of the matter, I asked said department to certify the lawful existing and effective tariffs of the Sound Ferry Lines, Inc. I now have such certified tariffs before me, and with respect to the Edmonds-Port Ludlow route, they show the following classification and rates.
'Touring Auto Busses or Stages

"Not over seven passenger capacity same rate as heavy passenger cars.

"Over seven passenger and not over fifteen passenger capacity............................. 5.00 *A—

"Over fifteen passenger and not over twenty-five passenger capacity ..................... 8.00 *A—
Over twenty-five passenger capacity.......10.00 *A—

"*Advance. This rate effective July 12, 1926.'

"My attorneys inform me that this tariff applies to your stages and that I will be held legally accountable for its collection. Assuming that my information is correct, that your stages are of such capacity as to require the application of the maximum rate, and that

they are making six crossings per day, you have already become indebted to me as receiver for this service (apart from our proportion of the passenger fare) in the sum of $480. The amounts involved in this transaction are so large that I feel that the proper administration of my trust requires me to insist that in the future you either,

"(1) Pay the appropriate tariff as each stage goes aboard the ferry,

"(2) Or furnish bond satisfactory as to amount and surety to cover monthly settlements.

"Unless you have arranged to comply with one or the other of these proposals by the morning of Saturday, May 19th, I will be compelled to deny your stages transportation.       Very truly,

"(Signed) J. S. Robinson,
"Receiver of Sound Ferry Lines, Inc."

This communication was followed by a formal complaint being made by the Wolverton Company, addressed to the department of public works, looking to the compelling of Robinson, as receiver, to comply with the contract between it and the Ferry Lines, and the compelling of Robinson, as receiver, to transport the stages of the Wolverton Company over the route of the Ferry Lines for a compensation of one hundred dollars per month. This complaint led to a hearing before the department of public works and its findings and orders, the latter, in so far as we need here notice their language, being as follows:

"WHEREFORE, IT IS ORDERED that the respondent John S. Robinson, receiver of the Sound Ferry Lines, Inc., transport the stages of complainant between Port Ludlow and Edmonds for the sum of $100 per month in accordance with the contract heretofore referred to; such sum to be in addition to the division of through rates of 50c one way and 80c round trip for each stage passenger, in accordance with our order No. 5110-M-36-6006 consolidated.

"IT IS FURTHER ORDERED that said receiver cease and desist from collecting or attempting to collect from

complainant for the transportation of its stages between Port Ludlow and Edmonds, the sum of $10 per trip or any sum other than as hereinbefore ordered.''

These orders of the department of public works were, at the instance of Robinson, as receiver, reviewed by the superior court for Thurston county, resulting in a judgment of that court, reversing and setting them aside. From this judgment of the superior court, the Wolverton Company has appealed to this court.

At the commencement of the hearing before the department of public works, counsel for the receiver of the Ferry Lines challenged the jurisdiction of the department, and also the sufficiency of the complaint of the Wolverton Company as stating legal grounds for the relief it sought. These challenges were renewed in the review hearing in the superior court. The judge of that court, in his memorandum opinion, expressed his conclusion as follows:

''In this matter, the court is not at all certain on the motion and jurisdictional questions raised by the attorneys for the receiver, but I am convinced, on the merits, that the order of the department must be reversed, for the reason that it is discriminatory.''

Since we have concluded that the superior court correctly disposed of the case upon the merits, we pass the questions raised by the challenges above noticed.

■ . It seems plain to us that there are not here involved any rights of the Wolverton Company, as against the Ferry Lines or its receiver, other than such rights as the Wolverton Company possesses as a shipper, or one seeking to become a shipper, of its stages over the Ferry Lines. The fact that the Wolverton Company is a connecting public carrier with the Ferry Lines does not, as we view the respective rights here in question, make their relation other than that of shipper and carrier or prospective shipper and carrier.

74

Let us then, for the moment, forget that the Wolverton Company is a connecting public carrier with the Ferry Lines. Let us also remember that the through passenger fares and their apportionment between these three connecting carriers are matters regulated by tariff, wholly independent of any tariff chargeable for the transportation of the Wolverton Company's stages over the route of the Ferry Lines. Those through passenger fares and their apportionment between the three carriers are in all respects exactly the same, whether the stages are transported over the route of the Ferry Lines, or not. Thus, we have the clarified problem of what is the lawful tariff chargeable against the Wolverton Company, viewing that company only as a shipper, for the transportation of its stages over the route of the Ferry Lines.

It is plain, by the record before us, that the only regularly filed and established tariff applicable to charges for the transportation of stages over the route of the Ferry Lines, is the above quoted tariff which became effective July 12, 1926. It is argued, in behalf of the Wolverton Company, that this tariff does not apply to stages which maintain a regular time schedule operation, but applies only to busses and stages having no regular time schedule of operation. Testimony was given to the effect that, at the time this tariff became effective, there were no stages, having regular time schedules of operation, transported over the route of the Ferry Lines, and that it was then hoped to attract over the route sight-seeing busses having no regular schedule, and that that tariff had reference only to such busses. We do not think that the testimony of the intent of the Wolverton Auto Company's officials, or of the department of public works' officials, should be considered as controlling of the meaning of the filed and established tariff, when the language of that tariff

conveys to the ordinary mind, as we think the language of this tariff does, the evident intent that all stages, regardless of the frequency or regularity of their transportation, shall be charged according to this tariff. The words "touring busses" may suggest irregularity, or casual transportation over the lines of the ferry, but the word "stage" plainly suggests regularity of transportation (See definitions in Standard and Webster's dictionaries). We are of the opinion that the tariff of July 12, 1926, above quoted, is the existing lawful tariff now governing the transportation of stages over the route of the Ferry Lines, and is applicable to transportation of the stages of the Wolverton Company as well as all others, unless that tariff has been, since then, lawfully changed by either of the two special contracts entered into between the Wolverton Company and the Ferry Lines.

■ Our public service law, referring to sections of Remington's Compiled Statutes, in so far as necessary to be here noticed, reads as follows:

"§ 10350. Every common carrier shall file with the commission [now department of public works] and shall print and keep open to the public inspection schedules showing the rates, fares, charges and classification for the transportation of persons and property within the state between each point upon its route and all other points thereon; . . .

"§ 10354. No common carrier shall charge, demand, collect or receive a greater or less or different compensation for transportation of persons or property, or for any service in connection therewith, than the rates, fares and charges applicable to such transportation as specified in its schedules filed and in effect at the time; . . .

"§ 10356. No common carrier shall, directly or indirectly, by any special rate, rebate, drawback, or other device or method, charge, demand, collect or receive from any person or corporation a greater or less com-

pensation for any service rendered or to be rendered in the transportation of persons or property except as authorized in this act, than it charges, demands, collects or receives from any person or corporation for doing a like and contemporaneous service in the transportation of a like kind of traffic under the same or substantially similar circumstances and conditions.''

The exceptions mentioned in the last quotation are of no consequence in our present inquiry. Neither of the two special contracts made between the Wolverton Company and the Ferry Lines after the filing and establishing of the tariff of July 12, 1926, was ever filed with the department of public works, the last of the two contracts not even being in writing. Clearly, neither of those contracts constitutes even an attempt to establish a new general rate applicable to transportation of stages over the route of the Ferry Lines. It seems to us that the entering into and acting under these special contracts was in plain violation of the provisions of our public service statutes, above quoted. The rates so especially agreed upon were manifestly not intended as regular rates applicable to all stages, and were manifestly discriminatory in favor of the Wolverton Company.

Some contention is made in behalf of the Wolverton Company, rested upon the theory that these special tariff contracts between it and the Ferry Lines were justified, in that they worked to their mutual advantage in that the avoidance of change of through passengers from stage to boat, and from boat to stage, made the through route more attractive to the traveling public, and thereby induced a greater amount of such travel, to the benefit of the business of both the Wolverton Company and the Ferry Lines. This, it seems to us, is but equal to one carrier saying to another: ''You conduct your business in such manner that its influence will help my business, and I will discriminate

in your favor as a shipper." No decision has been brought to our attention sanctioning any such justification for discrimination. Nor has any decision been brought to our attention sanctioning a discrimination in rates in favor of a shipper because of large amount or number of his shipments. Such a doctrine would open the way to rendering legal restrictions against discrimination, a dead letter. We are of the opinion that such discrimination cannot lawfully be made.

We conclude that the judgment of the superior court, reversing the order of the department of public works, must be affirmed. It is so ordered. This disposition of this case, of course, does not stand in the way of the establishment of a new general tariff of rates chargeable for the transportation of stages over the route of the Ferry Lines, in so far as the department of public works has, through appropriate proceedings, jurisdiction in the premises. We decide only that the department cannot enforce either of these special rate contracts as such, since they are discriminatory in the light of the present established tariff.

MILLARD, MAIN, TOLMAN, and FRENCH, JJ., concur.