545 S.W.2d 927 (1976)
COMMONWEALTH of Kentucky ex rel. Robert F. STEPHENS, Attorney General, Movant,
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY, Respondent.
Supreme Court of Kentucky.
December 3, 1976.
*928 Robert F. Stephens, Atty. Gen., James E. Rogers, Jr., Laura L. Murrell, Asst. Attys. Gen., Morris E. Burton, Frankfort, for movant.
Lively M. Wilson, James G. Apple, Stites, McElwain & Fowler, William S. Connolly, Gen. Atty., South Central Bell Tel. Co., Louisville, Norman C. Frost, Vice President and Gen. Counsel, South Central Bell Tel. Co., Birmingham, Ala., W. M. Booker, Jr., *929 Gen. Sol., and John P. Fons, Sol., Birmingham, Ala., Martin R. Glenn, Louisville, for respondent.

GRANTING RELIEF PURSUANT TO CR 65.07
LUKOWSKY, Justice.
This cause is before the court on motion of the Attorney General for relief from a temporary injunction granted by the Franklin Circuit Court which restrained enforcement of a rate order made by the Public Service Commission prescribing telephone rates for South Central Bell.
On March 14, 1975, South Central Bell filed with the Commission, pursuant to KRS 278.180, notice that it proposed to increase its rates and charges for various services rendered by it in Kentucky effective April 3, 1975, to produce an additional $33 million in revenues on an annual basis.
Pursuant to the authority granted to the Commission in KRS 278.190, an order was entered suspending the proposed rates for a period of five (5) months from April 3, 1975, and thereafter the Commission undertook an investigation of the proposed rates. Hearings were begun on April 22, 1975, and were not completed until September 17, 1975. The Commission not having entered an order within the five months suspension period, South Central Bell, on September 3, 1975, and pursuant to KRS 278.190, placed its proposed tariffs into effect, which tariffs are still being charged.
The Commission, by order entered December 31, 1975, denied the schedule of rates which had been placed in effect by South Central Bell and, instead, directed South Central Bell to make effective rates designed by the Commission to generate only an additional $15 million in revenues on an annual basis. Further, the Commission ordered South Central Bell to refund all rates and charges which had been collected since September 3, 1975, in excess of those authorized by the aforesaid order.
The Commission, in its rate order of December 31, 1975, found that, "a return of 8.95% on Net Investment of $394,945,000 will produce a return of 11% on Equity which will be sufficient to permit Applicant to maintain its financial integrity and raise the required capital to expand and provide adequate service in its service area." (Emphasis supplied.) The Commission further found in that same order:
"(1) the rates set out in Appendix `B' (those fixed by the Commission) attached hereto are the fair, just and reasonable rates and said rates will produce sufficient revenues to permit the Applicant to pay its operating expenses, service its debt, pay a reasonable dividend on its stock and have a reasonable amount for its surplus;
(2) that the return produced by the revenues authorized herein will permit the Applicant to obtain capital at reasonable cost so that it may continue to expand and improve its service to the public it is obligated to serve;
(3) that the proposed schedule of rates for intrastate telephone service proposed by the Applicant and now being charged would produce an excessive return. . . ."
On January 9, 1976, South Central Bell filed an appeal in the Franklin Circuit Court against the Commission under KRS 278.410, contesting the validity of the order of the Commission dated December 31, 1975. The complaint alleged that the rates ordered by the Commission were unjust, unlawful and confiscatory, and would not produce the rate of return which the Company found to be the minimum required by the Company. The Commission filed an answer denying the allegations of the complaint. The Attorney General of Kentucky and the City of Louisville were permitted to intervene and have filed answers as intervening defendants.
South Central Bell kept the rates which had previously been instituted in effect pending a final determination of the validity of the Commission's order by the Franklin Circuit Court.
The Franklin Circuit Court, on March 2, 1976, sustained motions of the Commission *930 and intervening defendant, the Attorney General, to require South Central Bell to cease immediately collecting rates in excess of those rates allowed by the Commission. However, that order was set aside on March 22, 1976.
On March 4, 1976, South Central Bell filed a motion before the Franklin Circuit Court for a temporary injunction to stay the operation and enforcement of the Commission's order of December 31, 1975, pending a final judgment on the merits of the appeal of the order. The grounds stated for such motion were (a) that the Commission's order was arbitrary, unjust, unlawful, and unreasonable; confiscatory under the Fourteenth Amendment to the Constitution of the United States and Sections 2, 13 and 242 of the Kentucky Constitution; and a denial of equal protection of the laws under said Fourteenth Amendment; (b) the order would result in immediate and irreparable injury, damage and loss and (c) the rates being collected were subject to refund with interest if the Commission's order were sustained and thus South Central Bell's customers would sustain no injury by the issuance of a temporary injunction. Affidavits were filed in support of said motion.
A hearing on the motion for temporary injunction was held by the Franklin Circuit Court, on March 22, 1976. The only witnesses to testify at that hearing were Messrs. E. Q. Faust and W. J. Lester of South Central Bell in support of the motion for a temporary injunction. There was no refutation by any witnesses of the Commission or the Attorney General of the fact that the excess revenues would be irretrievably lost to the Company if the injunction did not issue.
On March 31, 1976, the Franklin Circuit Court sustained the motion of South Central Bell and issued a temporary injunction enjoining and restraining the Commission from enforcing the terms of the December 31, 1975 rate order. The circuit court also ordered that the rates being charged by South Central Bell "shall remain subject to refund as provided by the Commission's order to the extent such rates are not allowed on final determination of this action."
In the last analysis the action of the circuit court is based on its finding:
"6. The Company will suffer immediate loss unless enforcement of the Commission's order is restrained pending a final determination of this matter, in that the Company will be permanently deprived of revenues from the rates finally allowed, to the extent such rates may exceed the rates prescribed by the Commission because such rates could not be retroactively collected prior to such final determination."
and its conclusion:
"4. The Company has no adequate remedy of law, and the equities favor granting the injunctive relief requested, in that the Company otherwise will be without a remedy if it prevails on the merits, but if the Commission's order is sustained, all rates collected in excess of those prescribed by the Commission will be subject to refund in accordance with the terms and conditions prescribed by such order."
If we extend the rationale of the circuit court to its ultimate conclusion, we find that in every case in which a utility is either awarded a rate increase less than it sought or directed to make a rate reduction, it is entitled to charge the higher rate, subject to refund, until all appeals are exhausted. We are constrained to ask, "Do constitutions require or did the legislature intend such a result?"
The federal and state constitutions protect against the confiscation of property, not against a mere reduction of revenue. South Central Bell Telephone Co. v. Louisiana Public Service Commission, 256 La. 497, 236 So.2d 813 (1970). A confiscatory rate is one that is unjust and unreasonable. Rates are non-confiscatory, just and reasonable so long as they enable the utility to operate successfully, to maintain its financial integrity, to attract capital and to compensate its investors for the risks assumed *931 even though they might produce only a meager return on the so-called "fair value" rate base. Federal Power Commission v. Hope Natural Gas Co. 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1943). By long standing usage in the field of rate regulation the "lowest reasonable rate" is one which is not confiscatory in the constitutional sense. Assuming that there is a zone of reasonableness within which the legislature or its designee is free to fix a rate varying in amount and higher than a confiscatory rate it is also free to decrease any rate which is not the "lowest reasonable rate". Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037 (1942).
Ratemaking is a legislative function and the power vested in the legislature to make rates may be exercised by it either directly or through some appropriate agency. L. & N. Railroad Co. v. Garrett, 231 U.S. 298, 34 S.Ct. 48, 58 L.Ed. 229 (1913). In KRS Chapter 278 our legislature delegated the power to fix rates in cases such as this to the Public Service Commission and provided for judicial review. KRS 278.390 provides in part:
"Every order entered by the commission shall continue in force until the expiration of the time, if any, named by the commission in the order, or until revoked or modified by the commission, unless the order is suspended, or vacated in whole or in part, by order or decree of a court of competent jurisdiction."
KRS 278.410 provides in part:
(1) ". . . any utility affected by an order of the commission may . . . bring an action against the commission in the Franklin Circuit Court to vacate or set aside the order or determination on the ground that it is unlawful or unreasonable.
* * * * * *
(3) "Injunctive relief may be granted by the circuit court in the manner and upon the terms provided by law."
KRS 278.430 provides:
"In all trials, actions or proceedings arising under the preceding provisions of this chapter or growing out of the exercise of the authority or powers granted to the commission, the party seeking to set aside any determination, requirement, direction or order of the commission shall have the burden of proof to show by clear and satisfactory evidence that the determination, requirement, direction or order is unreasonable or unlawful."
It is as obvious as the acropolis of Athens that an order of the commission continues in force until revoked or modified by the commission or unless suspended or vacated in whole or in part by the Franklin Circuit Court. The circuit court may vacate or set aside the order only if it is unlawful (confiscatory) or unreasonable. It may grant injunctive relief only in the manner and upon the terms, "provided by law."
It is significant that the legislature used the phrase "provided by law". It did not write "according to the principles of equity jurisprudence". The Chapter presents a unified and symmetrical scheme for the exercise of the legislative power of ratemaking. We do not believe that the legislature, by the use of such restrictive language, intended to open up the area for discretionary relief granted upon comparatively nebulous and generous equitable principles. We read the legislative mandate as directing us to keep our judicial fingers out of the ratemaking pie except to the degree that the constitutions require our intervention.
A utility company is entitled to temporary injunctive relief only if it establishes that there is a reasonable probability that it will succeed on final hearing in proving that the rate set by the Commission in its order is confiscatory in the previously defined constitutional sense.
The rule applicable to stay orders or temporary injunctions in rate cases is stated in 73 C.J.S. Public Utilities § 67, at page 1204 as follows:
"In order to warrant an injunction pendente lite it must appear that there is a reasonable probability that complainant will prevail on final hearing; and, where the matter is doubtful or where it is probable that a practical test will be required *932 to ascertain the reasonableness of the order or regulation in question, such relief should be refused. So, where there is any doubt as to the proper exercise of the commission's discretion in making its order, as where the record presents a bona fide controverted issue of fact, a temporary injunction should not be granted. Injunctive relief in such case should not be granted except after a plenary trial of the issues on the merits".
It is enough to say that the evidence before the circuit court would not support a finding and the circuit court did not find that there was insufficient revenue produced by the Commission's order to cover either operating expenses or capital costs, including service on the debt and dividends on the stocks at a rate of return to the equity owner commensurate with returns on investments in other enterprises having corresponding risks, or that the rate of return was insufficient to insure confidence in the financial integrity of the enterprise, so as to maintain its credit and attract capital. In other words there is no evidence that the rate fixed by the Commission is less than the "lowest reasonable rate". The evidence adduced by South Central Bell, viewed in the light most favorable to it, establishes no more than that the rate of return allowed by the Commission is slightly less than the current interest rate on high grade corporate bonds. The constitutions and statutes, like the Salvation Army, aid the needy not the greedy.
KRS 278.190(4) makes it manifestly clear that a utility need not make refund of excess rates collected until after the final termination of litigation.
The temporary injunction was erroneously granted and it must be vacated. The order of the Franklin Circuit Court entered March 2, 1976 will be reinstated.
It is so ordered.
Full court sitting; all concur except JONES, STEPHENSON and STERNBERG, JJ., who dissent.
REED, C. J., files separate concurring opinion in which PALMORE, J., joins.
REED, Chief Justice (concurring).
I concur in the majority opinion granting relief pursuant to CR 65.07.
The only operative finding of fact made by the trial court was that the movant would suffer loss by reason of being "permanently deprived of revenues from the rates finally allowed, to the extent such rates may exceed the rates prescribed by the Commission because such rates could not be retroactively collected prior to such final determination".
The dissenting opinion, in order to reach its result, asserts the trial court's findings are determinations that without this increase the respondent will not collect sufficient income to meet its operating expenses, service its debt, and earn a justifiable profit. Thus, the respondent will not be able to provide proper, competent, and efficient service. The dissent states: "Not only does this constitute an emergency condition, but it demonstrates that the credit of the company and its operations will be materially impaired by a failure to permit the rate to become effective." Hence, the dissent undertakes to make findings of facts that the trial judge did not make, so far as the arguments in the briefs or oral argument indicate. The Commission granted some of the increase applied for. Its administrative determination should not be preliminarily enjoined without a clear showing of the need to do so.
PALMORE, J., joins in this opinion.
JONES, Justice (dissenting).
In my view, the action of the trial court enjoining the Public Service Commission from enforcing the rate order of December 31, 1975 was proper. The trial court directed that rates charged by South Central Bell, "shall remain subject to refund to the extent such rates are not allowed on final determination of this action." South Central Bell has executed sufficient bond to manifest its good faith in that respect.
The trial court's order comports with the provision of the statute quoted in the majority *933 opinion. KRS 278.390. The commission's order shall continue unless the order is suspended in whole or in part by order of a court of competent jurisdiction.
I am not willing to substitute my judgment for that of the trial court, who heard and determined the matter. In my opinion the findings are not clearly erroneous. CR 52.01. Therefore, I would sustain the trial court's temporary injunction of March 31, 1976.
For the reasons enumerated, I respectfully register my dissent.
STEPHENSON, J., joins in this dissenting opinion.
STERNBERG, Justice (dissenting).
The application of South Central Bell Telephone Company for an increase in intrastate telephone rates sufficient to increase its income by $33 million per year was denied by the Public Service Commission. It did, however, approve a rate increase sufficient to generate $15 million per year, which is less than one-half of the amount sought. The respondent, in a proceeding in the Franklin Circuit Court, secured a temporary injunction against putting the order of the Public Service Commission into effect. Interlocutory relief in the form of an injunction is authorized by KRS 278.410(3). As a result South Central Bell is able to collect intrastate telephone rates sufficient to generate the full increase which it seeks. The Commonwealth is here, under CR 65.07, seeking to have the temporary injunction dissolved.
Upon a final disposition of an appeal from an order of the Public Service Commission, the circuit court may not set aside or vacate it except upon a showing that the order is unlawful or unreasonable. KRS 278.410. We are not at this time confronted with the final disposition but only with the propriety of the issuance of a temporary injunction. A temporary injunction is designed merely to hold a status quo until the case can be decided on its merits. Curry v. Farmers Livestock Market, Ky., 343 S.W.2d 134 (1961). The right to a temporary injunction is addressed to the sound discretion of the trial court, and this court should not set aside a temporary injunction unless it is clear that the trial court abused its discretion. Oscar Ewing, Inc. v. Melton, Ky., 309 S.W.2d 760 (1958). The trial judge filed findings of fact and conclusions of law in which he found, among other things, the following:
"5. The Company, pursuant to KRS 278.410, filed this action for review of the Commission's order claiming that the said order was arbitrary, unjust, unlawful and unreasonable for a number of reasons. It is asserted that the order fails to permit the Company to charge rates which will produce revenues necessary to meet its operating expense, service its debt and earn a rate of return that will attract capital and otherwise maintain its financial integrity; it does not produce the overall rate of return of 8.95% and the rate of return on equity of 11% which the Commission finds necessary to attract capital and maintain the financial integrity of the Company.
6. The Company will suffer immediate loss unless enforcement of the Commission's order is restrained pending a final determination of this matter, in that the Company will be permanently deprived of revenues from the rates finally allowed, to the extent such rates may exceed the rates prescribed by the Commission because such rates could not be retroactively collected prior to such final determination.
7. Restraining enforcement of the Commission's order will maintain the status quo. The rates placed into effect by the Company on September 3, 1975, pursuant to KRS 278.190(2), are presently being charged, are subject to refund as provided by the Commission's order, and the relief requested will not require any other party hereto to change its course of action.
8. The equities justify granting the relief requested. Restraining enforcement *934 of the Commission's order will secure the benefits of the Company's appeal if it is ultimately successful, but will not prejudice the Commission or the other parties hereto. The Company's ratepayers are adequately protected because, if the Commission's order is finally upheld, they will be entitled to refunds of the amounts collected in excess of the rates prescribed by the Commission together with interest thereon, as provided by its order, and the Company is maintaining its records in such manner as will enable it to make such refunds."
If the findings of fact and conclusions of law are not supported by clear and convincing evidence of substance, then and in that event the trial judge has abused his discretion and the temporary injunction should not be permitted to stand. On the other hand, the temporary injunction which was issued by the Franklin Circuit Court is wholly justified if it is shown by the evidence that:
1. The rights of South Central Bell Telephone Company will be violated by the order of the Public Service Commission, and
2. It will suffer immediate and irreparable injury, loss, or damage pending a final judgment on the action, or
3. The acts of the Public Service Commission will tend to render a final judgment ineffective. (CR 65.04).
The respondent is entitled to a rate that will yield a fair and reasonable return. The rate which yields less than this is unjust, unreasonable, and confiscatory. 64 Am. Jur.2d Public Utilities, § 135. In Citizens Telephone Co. v. Public Service Commission, Ky., 247 S.W.2d 510 (1952), this court, in the course of its opinion, wrote:
"As said by the Supreme Court in the Hope case (Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333), rates which enable the utility to operate successfully, to maintain its financial integrity, to attract capital, and to compensate its investors for the risks assumed, cannot be condemned as invalid, even though they might produce only a meagre return on the so-called `fair value' rate base. Obviously, in times of inflated values, such as the present, a low rate of return based on reproduction cost new will adequately supply the financial needs of the utility."
I construe the court's findings as being an affirmative finding from the evidence and from the record that the rates which the Public Service Commission had authorized are not sufficient to produce an overall rate of return and a return on equity sufficient to attract capital and maintain the financial integrity of the company. I further construe the court's findings to be that the company will be unable to collect from many of its customers the difference between the amount it is authorized to collect pursuant to the order of the Commission and the amount which it should have been permitted to collect. The rationale, as I construe the court's findings, is a determination that without this increase the respondent will not collect sufficient income to meet its operating expenses, service its debt, and earn a justifiable profit. As a result thereof, the respondent may not be able to provide proper, competent, and efficient service. Not only does this constitute an emergency condition, but it demonstrates that the credit of the company and its operations will be materially impaired by a failure to permit the rate to become effective.
It does not follow and it is not this writer's purpose to leave the impression that in every case where the Public Service Commission approves a rate less than that requested, the applicant should be permitted to charge the requested rate until the case has been finally decided and the permanent rate established. For example, the rate increase may be less than the amount sought, yet engender sufficient income so that the company may satisfactorily carry out its operations without jeopardy to its ability to compete. Each case would have to stand on its own bottom. We must bear *935 in mind that a sound financial structure of a public utility is necessary for its safe and satisfactory operation. The testimony of the witnesses for the respondent demonstrates that its financial condition, if the order of the Public Service Commission is put into effect at this time, may injuriously affect its financial structure.
The findings of the court portray the immediate irreparable and serious injury. True it is that the trial judge did not find that in the event the respondent is not permitted to charge the full rate of increase, it will be bankruptcy bound. Such a condition is not essential to justify the temporary injunction.
In the landmark case of Oscar Ewing, Inc. v. Melton, Ky., 309 S.W.2d 760 (1958), there is set out the guidelines to be considered in granting or denying a temporary injunction. In considering the propriety of the issuance of a temporary injunction, we should bear in mind, among other things, that it does not justify a determination of the issues that are being litigated and there is no appeal from an order granting a temporary injunction. The prime consideration is threefold:
1. Are the applicants for the temporary injunction suffering immediate irreparable and serious injury at the present time, or will they suffer such injury pending a final decision?
2. Are the applicants seeking to maintain the status quo, or are they requesting mandatory relief which would require the defendant to change his course of action?
3. Do the equities of the situation justify the granting of such extraordinary relief at this time?
We need not be solely guided by the irreparable injury requirement. If, upon consideration of the whole case, the equities of the parties justify the temporary injunction, the court is fully justified in its issuance. The respondent, prior to the issuance of the temporary injunction, posted a bond with the trial court in the sum of $250,000. In the event the full increase sought by respondent is not finally allowed, each customer will be refunded any excess that he has been required to pay with interest. In those cases where a customer who is entitled to a refund cannot be located, the refund will escheat to the Commonwealth of Kentucky; it will not inure to the benefit of the respondent.
In Mountain View Rural Telephone Co. v. Interstate Utilities Co., 55 Idaho 86, 38 P.2d 40, the Supreme Court of Idaho had before it a contest of telephone rates. Appellant, in its petition for a stay, alleged as follows:
"That if a stay of said order is not made by the Supreme Court of the State of Idaho, said Interstate Telephone Company, appellant, will suffer immediate and irreparable damage, for which it cannot be compensated because it will be necessary to change its system of accounts and billing to users of telephone service of the class involved and defined by said Order, in that the users of telephone service will be billed at reduced rate; that such users are located at distant and isolated points over a wide territory in Northern Idaho, and should said order thereafter be reversed or modified it would be necessary to collect an increased rate and in numerous cases it would be difficult for said Company to contact said user, and if legal proceedings became necessary there would be a multiplicity of suits over a small sum, with expense and costs to the Company entirely disproportionate to the amount involved. In a great many cases, also there is grave doubt whether or not collection might be made by legal process."
In considering the charge, the court said:
"There is, however, merit in the contention of the company that it would suffer irreparable damage for the reason that the telephone users are located at distant and widely separated points in Northern Idaho and in the event of a reversal or modification of the order it would be necessary to collect an increased rate; that in numerous cases it would be difficult to contact such users; and if *936 legal proceedings became necessary, there would be a multiplicity of suits over small sums, with expense and cost to the company entirely disproportionate to the amount involved, and in many cases grave doubt as to collection."
In disposing of the attack on the temporary injunction, the Supreme Court of Idaho stayed the restriction of the Commission, which, in the case at bar, would be the same as continuing the temporary injunction in full force and effect until further orders of this court.
In the subject action, the trial court made findings of fact which this court will not set aside unless clearly erroneous, and we are charged with the responsibility of giving due regard for the opportunity of the trial court to judge the credibility of the witnesses (CR 52.01). We must bear in mind that a finding by this court in favor of the respondent would not be an adjudication of its entitlement to its full rate increase. This is only an interlocutory matter and the full and final determination of the rights of the parties is yet to be made by the trial court.
I would deny the motion of the Commonwealth to dissolve the temporary injunction.