**KENTUCKY POWER COMPANY,**
**Movant,**

v.

**ENERGY REGULATORY COMMISSION OF KENTUCKY, Respondent.**

Supreme Court of Kentucky.

Nov. 24, 1981.

E. Gaines Davis, Jr., Frankfort, for movant.

William M. Sawyer, Frankfort, for respondent.

## OPINION OF THE COURT

At the conclusion of proceedings in which the movant, Kentucky Power Company, sought rate increases totalling approximately $9,804,000 per annum the respondent Public Service Commission (then called Energy Regulatory Commission) entered a final order allowing increases totalling approximately $7,020,366 and prescribing new rates calculated to effect such an increase. The order also directed the Company to file within 20 days a certified statement showing the annual operating revenues that would be produced by the new rates. The Company then applied to the Commission for a rehearing, alleging that the prescribed new rates would in fact produce an increase of only $3,571,020, or $4,006,040 less than the $7,020,366 they were intended to effect, and filed its certificate showing that the new rates would have this result. Attached to this certificate was a schedule of rates designed by the Company which it alleged would produce the desired increase of approximately $7,000,000. In due course the Commission, without hearing further evidence, denied the application for rehearing, whereupon the Company filed a complaint pursuant to KRS 278.410 requesting judicial relief.

The circuit court remanded the matter to the Commission "for the sole purpose of receiving evidence as to the amount of additional revenues which the prescribed rates, when applied to test-year data, will produce." The order of remand, issued on June 12, 1979, further directed the Commission "to schedule said hearing promptly; to expedite the conclusion and transcription thereof, and to certify the transcription to the Court, upon the receipt of which this cause shall stand submitted upon the sole question .... whether the prescribed rates when applied to test-year data will produce the $7,020,366 in additional revenues authorized by the December 20, 1978 order ... and if not, what remedial action is required."

On July 30, 1979, the Company tendered to the Commission the verified statements of several witnesses and moved that a hearing be scheduled or that these statements be certified to the circuit court as evidence. The Commission thereupon scheduled a hearing for August 8, 1979, at which hearing the Company produced its witnesses and offered them for cross-examination. Two of its witnesses were cross-examined by the Commission staff, but no evidence was offered by the staff. At the close of the hearing the Commission directed that the proceedings be transcribed and certified to the court as soon as possible. The transcript was duly certified and filed with the circuit court on August 22, 1979. On the same day, August 22, 1979, counsel for the Commission, acting in the name of the "Staff of the Energy Regulatory Commission," filed with the Commission a motion that the record be reopened to allow the submission of staff testimony. This motion recited that after reviewing the transcript the staff was of the opinion that certain points raised by the Company "require clarification through rebuttal testimony." At this time, of course, the matter was no longer before the Commission, so on September 17, 1979, the Commission moved the circuit court for similar relief, alleging among other things that "permitting staff personnel to testify in rate proceedings required a policy decision by the Defendant which had not been made at the time of the hearing on August 8, 1979" and that "one of the witnesses who participated in that phase of this proceeding creating the existing controversy was not available to testify at the said hearing."

Observing "that the defendant had ample time between June 12, 1979, and August 8, 1979, to make any policy decisions as to how the hearing should be conducted and to have any needed witnesses present," the circuit court denied the motion to reopen, directed the Commission to certify to the court the prefiled testimony of the Company's witnesses, allowed time for briefs, and ordered the matter submitted upon expiration of that time.

After reviewing the record and briefs the circuit court entered findings of fact, conclusions of law and a judgment finding that the new rates prescribed by the Commission would produce additional revenues of only $3,014,317 annually, or $4,006,049 less than the $7,020,366 target figure, concluding that to the extent of the shortage those rates were unreasonable, unlawful and confiscatory and should be set aside, and directing the Commission (a) to allow the company to put into effect rates sufficient to produce $7,020,366 in additional revenues and (6) to apply over a period of not more than 12 months appropriate surcharges to recoup its loss of such revenues for the period between December 20, 1978 (the date of the Commission's order prescribing new rates), and the date of the judgment.

An appeal by the Commission resulted in an opinion by the Court of Appeals reversing the judgment on the ground that the circuit court had abused its discretion in refusing to permit a reopening of the administrative proceeding, thus "prematurely terminating the Commission's inquiry," and had usurped the Commission's function by "effectively prescribing new rates for the Company." This court granted review of that decision.

 We recognize without question that it is not a judicial function to fix utility rates, and that a public regulatory agency must have broad latitude in the conduct of its proceedings. It is, however, the right and duty of the court to protect parties who are subject to the authority of such an agency from arbitrary and capricious treatment.

 The Commission's order disposing of the Company's application for a rate increase was entered on December 20, 1978. Its order of March 5, 1979, affirming that decision without hearing further evidence concluded its proceedings. When the Company filed its complaint the controversy came under the jurisdiction of the circuit court. The court was acting within its rightful authority in remanding the matter to the Commission for the purpose of entertaining further evidence on the question of whether the rates prescribed by the Commission would in fact result in the increase they were designed to produce. In this particular context, the purpose of the remand was in keeping with KRS 278.440 in that it directed the Commission to hear new evidence that could not have been obtained by the Company prior to the original hearing (to wit, that the rates thereafter fixed by the Commission would not in fact achieve its stated purpose of producing an annual increase of $7,020,366).

The order of remand, entered on July 12, 1979, directed that the hearing be held promptly. Presumably that was a reasonable exercise of the court's discretion. Nevertheless, no action was taken by the Commission until July 30, 1979, when the Company tendered the prepared testimony of its witnesses and requested a hearing. The hearing was conducted on August 8, 1979. The Company's witnesses were there for cross-examination and their prefiled testimony in chief had been in the Commission's hands and available to its staff since July 30. This evidence indicated that the major reason the Commission's rates fell some $4 million short of achieving the $7 million in additional revenues to which the Commission's order of December 20, 1978, declared the Company entitled was that the Commission had changed the standard fuel adjustment formula at a time subsequent to the test year (April 1, 1977 to March 31, 1978), and that the difference between the fuel adjustment clause now in effect as opposed to the fuel adjustment clause in effect during the test year was not reflected in the rates designed by the Commission staff.

As heretofore mentioned, this explanation of the discrepancy had been made

available to the staff well in advance of the August 8 hearing. Representatives of the Company had met with members of the Commission staff and discussed the point shortly after the problem with the new rates was discovered. One of the Company's witnesses introduced a copy of the Commission staff's worksheets covering this phase of its calculations. There is no question here of the Commission's having been "sandbagged" at the August 8, 1979, hearing by testimony it was not in a fair position to rebut.

We have recited these events in detail because they provide the context in which we must consider whether the action of the circuit court in declining to let the Commission staff toy with the case any longer was an abuse of discretion, as held by the Court of Appeals. We have no difficulty in deciding that there was no semblance of such an abuse.

With regard to the argument that the circuit court has entered the forbidden area of rate-making, it is important to bear in mind that rates are merely the means designed for achieving a predetermined objective, which in this instance was how much additional revenue should the Company be allowed to earn. That determination, made solely by the Commission and not in any degree or respect disturbed by the court, was as follows:

"In the Commission's opinion a proper return in this case is 10.24%. The annual increase in net operating income necessary to produce the rates found reasonable, 10.24% on Net Investment and 8.91% on Capital Structure, is $3,571,120. This amount, adjusted for taxes, results in gross additional revenues of $7,020,366 on the amount of revenues granted herein."

We do not accede to the proposition that in remanding the case to the Commission the court was obliged to remand it for all purposes and leave the Commission free to start the inquiry all over again. Even a public utility has some rights, one of which is the right to a final determination of its claim within a reasonable time and in accordance with due process. This Company had been wooled around long enough.

There was only one question left to decide—that is, whether the rates designed by the Commission staff would accomplish the result for which the Commission itself intended them. The Commission had declined to receive any evidence to show that they were not. Considering that circumstance to be arbitrary, as it clearly was, the court ordered the Commission to receive the evidence, and we are of the opinion that it was proper for the court in so doing to confine the additional inquiry to the single point in issue.

Technically, in remanding the case to the Commission for the purpose of hearing further evidence the court should have required the Commission also to determine the effect of that evidence. Nevertheless, the testimony of the Company's witnesses filed at the court-ordered hearing on August 8, 1979, standing virtually uncontradicted, had probative value sufficient to compel a finding consistent with it. Therefore, had the Commission itself ruled to the contrary its action would have been arbitrary.

Finally, it is to be observed that the circuit court did not set any rates or direct the Commission to authorize those submitted by the Company with its certificate showing the inadequacy of the rates fixed by the Commission. The judgment determined that the rates prescribed by the Commission, when applied to test-year data, would fall $4,006,049 short of producing the $7,020,366 in additional revenues they were intended to produce, and it directed the Commission to allow the Company to put into effect rates that would produce $7,020,366 in additional revenues. We do not construe the judgment as binding the Commission to accept willy-nilly every figure and every rate proposed by the Company. We do think, however, that except as otherwise determined in its original order of December 20, 1978, the Commission is required to accept the methods and figures, including those pertaining to the fuel adjustment clause, explained by the Company's witnesses as having been used by them in calculating its revenues and expenses.

The decision of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

All concur.