STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION AND THE PUBLIC STAFF v. CAROLINA TELEPHONE AND TELEGRAPH COMPANY

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION AND CAROLINA TELEPHONE AND TELEGRAPH COMPANY v. THE PUBLIC STAFF

No. 8210UC706

(Filed 1 March 1983)

1. **Telecommunications § 1.2; Utilities Commission § 20— telephone rates—consideration of yellow page revenues and expenses**

The Utilities Commission properly included the revenues and expenses associated with yellow page directory advertising in computing a telephone company's gross revenues and expenses for ratemaking purposes.

State ex rel. Utilities Comm. v. Carolina Telephone

2. **Telecommunications § 1.2; Utilities Commission § 20— telephone rates—imputed interest expense from investment tax credit**
The Utilities Commission properly excluded all imputed interest expense related to the Job Development Income Tax Credit in determining a telephone company's income tax expense for ratemaking purposes. I.R.C. § 46(f)(2).

APPEAL by Carolina Telephone and Telegraph Company and by the North Carolina Utilities Commission—Public Staff from an Order of the North Carolina Utilities Commission. Order entered 6 April 1982. Heard in the Court of Appeals 10 November 1982.

Carolina Telephone and Telegraph Company (CT&T) filed an application to increase its rates and charges for telecommunications services in North Carolina on 27 August 1981. The Utilities Commission (Commission) declared the application to be a general rate case and ordered public hearings.

Following public hearings on the matter, the Commission issued an order granting an annual increase in gross revenues of $15,896,783. In its order, the Commission included the expenses and revenues associated with and derived from yellow page directory advertising in the revenues and expenses of CT&T. CT&T had not included such revenues and expenses in its application on the grounds that yellow page advertising is not an integral part of telephone service and is subject to competition.

In its order, the Commission also excluded all imputed interest expense related to the Job Development Income Tax Credit (JDITC) in determining CT&T's income tax expense for ratemaking purposes. This treatment was the one proposed by CT&T in its application and presentation. The Public Staff had proposed that a hypothetical interest expense related to JDITC be used as a deduction in determining CT&T's income tax expense for ratemaking purposes. The treatment proposed by the Public Staff would have lowered the cost of service upon which rates are based by decreasing CT&T's tax expense for ratemaking purposes.

CT&T has appealed to this Court on the yellow page issue, and the Public Staff has appealed on the JDITC issue.

*Paul L. Lassiter, for the North Carolina Utilities Commission—Public Staff, intervenor-appellee-appellant.*

*Hunton & Williams, by Edward S. Finley, Jr., for defendant-appellant-appellee.*

JOHNSON, Judge.

### DEFENDANT'S APPEAL

[1]  In our recent decision in *Utilities Commission and The New Telephone Co. v. Central Telephone Co.*, --- N.C. App. ---, --- S.E. 2d --- (No. 8210UC372, filed 18 January 1983), we held that the Commission had properly included the revenues and expenses from yellow page advertising in computing Central Telephone Company's gross revenues and expenses on three grounds: (1) that the furnishing of classified advertising by a telephone company is an essential part of the service it provides; (2) that there was an insufficient demonstration of competition for advertising revenue in the evidence presented; and (3) that this Court's judgment should not be substituted for the Commission's where the Commission's order is supported by a reasonable construction of the evidence. For the same reasons set forth in that opinion, we affirm in the present case the Commission's inclusion of revenues and expenses from yellow page advertising in the gross revenues and expenses of CT&T.

### INTERVENOR'S APPEAL

[2]  JDITC is an investment tax credit which was enacted by Congress in 1971 to stimulate employment by encouraging investment in new plants and equipment. I.R.C. §§ 38 and 46. It allows a taxpayer to reduce its tax liability to the Internal Revenue Service by a percentage of the cost of eligible property purchased during the tax year. To preserve the benefit of the credit for public utilities, Section 46(f)(2) of the Internal Revenue Code restricts the amount of the benefit generated by JDITC which a regulatory agency may require a utility to pass to its ratepayers in the form of reduced rates. Consequently, although JDITC reduces a utility's actual tax liability to the Internal Revenue Service, it does not so reduce its tax liability for ratemaking purposes. As a result, JDITC generates capital for utilities. CT&T and the Public Staff disagreed as to the treatment of this capital for ratemaking purposes.

In determining the issue, the Commission found and concluded as follows:

FINDINGS OF FACT

. . .

10. That the reasonable level of test year intrastate operating revenue deductions after accounting, pro forma, end-of-period, after-period, and supplemental adjustments is $189,878,168 . . .

. . .

EVIDENCE AND CONCLUSIONS FOR FINDING OF FACT NO. 10

. . .

Although the issues raised herein by the Public Staff concerning the proper rate-making treatment of JDITC may appear somewhat complex upon initial consideration, the Commission believes that, in reality, the issues are rather simple and straightforward. Simply stated, the Public Staff has treated JDITC as if this investment tax credit has been contributed by each component of the Company's capital structure in the same ratio as those components bear to the whole. Therefore, the methodology advocated herein by the Public Staff treats a portion of JDITC as if it were capital supplied by creditors, a portion as if it were capital supplied by preferred stockholders, and the remainder as if it were advanced by the common stockholders. On this basis, the amount of JDITC attributed to the creditors or debt holders multiplied by the embedded cost of debt results in an amount of hypothetical interest expense related to JDITC. This hypothetical interest expense is then used as a deduction in determining the Company's test year level of income tax expense for ratemaking purposes.

In contrast to the methodology advocated by the Public Staff, the Company's position is that all effects of JDITC should be excluded from the determination of interest expense to be used in developing the level of the Company income tax expense included in the cost of service. Hence, the methodology used by the Company attributes JDITC entirely to the common shareholders. This treatment is specifically mandated and prescribed by Section 1.46-6 of the Internal Revenue Code of Federal Regulations.

The Commission concludes that under Section 1.46-6 of the Internal Revenue Code, the Commission clearly may only treat JDITC as though it were capital contributed by the

common shareholders. Therefore, in computing the Company's tax liability, no imputed interest expense may lawfully be calculated on any portion of JDITC. Rather, JDITC must be treated as capital supplied by common shareholders and must be given a return no less than the overall cost of capital determined to be appropriate by this Commission. In this regard, the Commission strongly believes that the treatment of JDITC proposed by the Company is fair and reasonable and the only treatment which is permissible under Section 1.46-6 of the Internal Revenue Code.

The issue on appeal, as stated by the Public Staff in its brief, "is whether the Commission erred as a matter of law in concluding that Section 46(f)(2) of the Internal Revenue Code requires that all effects of JDITC should be excluded from the determination of interest expense."

G.S. 62-94 sets forth the standard of judicial review of orders of the Utilities Commission and includes the following:

(b) So far as necessary to the decision and where presented, the court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action. The court . . . may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

. . .

(4) Affected by other errors of law. . .

. . .

(e) Upon any appeal, the rates fixed or any rule, regulation, finding, determination, or order made by the Commission under the provisions of this Chapter shall be prima facie just and reasonable.

In this appeal, we are called upon to interpret the applicable sections of the Internal Revenue Code to determine whether the Commission's order is affected by errors of law. We conclude that the order is not so affected.

Section 46(f)(2) of Title 26 of the Internal Revenue Code provides that JDITC will be disallowed with regard to public utility property in the following two circumstances:

(A) Cost of service reduction.—If the taxpayer's cost of service for ratemaking purposes or in its regulated books of account is reduced by more than a ratable portion of the credit allowable by section 38 (determined without regard to this subsection), or

(B) Rate base reduction.—If the base to which the taxpayer's rate of return for ratemaking purposes is applied is reduced by reason of any portion of the credit allowable by section 38 (determined without regard to this subsection).

The term "ratable portion" is explained in Section 46(f)(6):

For purposes of determining . . . ratable portions under paragraph (2)(A), the period of time used in computing depreciation expense for purposes of reflecting operating results in the taxpayer's regulated books of account shall be used.

The following example of "ratable portion" appears in Section 1.46-6(g)(2) of the Treasury Regulations:

[I]f cost of service is reduced annually by an amount computed by applying a composite annual percentage rate to the amount of the credit, cost of service is reduced by a ratable portion.

The Internal Revenue Service has published the following regulations implementing Section 46(f)(2):

(2) Cost of service. (i) For purposes of this section, "cost of service" is the amount required by a taxpayer to provide regulated goods or services. Cost of service includes operating expenses . . . maintenance expenses, depreciation expenses, tax expenses, and interest expenses. . .

(ii) In determining whether, or to what extent, a credit has been used to reduce cost of service, reference shall be made to any accounting treatment that affects cost of service. Examples of such treatment include reducing by all or a portion of the credit the amount of Federal income tax expense taken into account for ratemaking purposes and reducing the depreciable bases of property by all or a portion of the credit for ratemaking purposes.

(3) Rate base. (i) For purposes of this section, "rate base" is the monetary amount that is multiplied by a rate of return to determine the permitted return on investment.

(ii) In determining whether, or to what extent, a credit
has been used to reduce rate base, reference shall be made to
any accounting treatment that affects rate base. In addition,
in those cases in which the rate of return is based on the tax-
payer's cost of capital, reference shall be made to any
accounting treatment that affects the permitted return on in-
vestment by treating the credit in any way other than as
though it were capital supplied by common shareholders to
which a "cost of capital" rate is assigned that is not less than
the taxpayer's overall cost of capital rate (determined
without regard to the credit). What is the overall cost of
capital rate depends upon the practice of the regulatory
body. Thus, for example, an overall cost of capital rate may
be a rate determined on the basis of an average, or weighted
average, of the costs of capital provided by common
shareholders, preferred shareholders, and creditors.

Treas. Reg. § 1.46-6(b) (2) (i), (ii) and (3) (i), (ii) (1979).

Essentially, Section 46(f)(2) and the regulation provide that a
utility remains eligible for the credit as long as cost of service is
reduced by no more than "a ratable portion of the credit," and as
long as no reduction is made in the rate base. The purpose of this
scheme, as revealed by legislative history, is to permit the
benefits of the credit to be shared by the consumers and the in-
vestors of the utility. H.R. Rep. No. 533, 92d Cong., 1st Sess.,
*reprinted in* U.S. Code Cong. & Ad. News 1825, 1839 (1971).

Pursuant to paragraph (A) of Section 46(f)(2), CT&T "flows
through" directly to its customers an annual percentage of JDITC
based upon the useful life of the property producing the credit
and thereby reduces its tax expense, and thus its cost of service,
by a ratable portion of the credit. This treatment of JDITC by
CT&T is not at issue in the present case.

Pursuant to paragraph (B) of Section 46(f)(2), CT&T makes no
reduction in its rate base on account of the credit and assigns the
overall cost of capital rate to the capital generated by the credit.

The Public Staff advocates an additional adjustment due to
the presence of JDITC. Assuming that, in the absence of JDITC,
the capital otherwise supplied by JDITC would be contributed by
all capital suppliers, including debt, in the same ratio as those

suppliers exist in CT&T's capital structure, the Public Staff maintains that a hypothetical interest expense attributable to that portion of JDITC which would have been provided by debt, in the absence of JDITC, should be deducted from CT&T's income tax expense for ratemaking purposes, in addition to the ratable reduction in taxes already produced by amortization of the credit. The Public Staff asserts that this adjustment to income tax expense for ratemaking purposes is in accord with Section 46(f)(2) based upon the language in Treas. Reg. Section 1.46-6(b)(3)(ii) that JDITC be "assigned a 'cost of capital' rate that is not less than the taxpayer's overall cost of capital rate (determined without regard to the credit)." The Public Staff also maintains that its position has been upheld in three federal court decisions and is, therefore, the correct one. Finally, the Public Staff contends that the ratepayers are entitled to an additional benefit from the proposed imputed interest on JDITC because they are the source of the cost free capital provided by JDITC. We reject each of these arguments.

The Public Staff's interpretation of the pertinent regulation completely ignores the words which precede the phrase relied upon by the Public Staff. The regulation clearly states that, to determine whether an improper reduction in rate base has occurred, reference should be made to any accounting treatment which treats JDITC "in any way other than as though it were capital supplied by common shareholders. . ." The phrase relied upon by the Public Staff refers to the determination of the "overall cost of capital rate" which must be applied to JDITC under the regulation. As such, the phrase deals with the rate of return which the utility is entitled to receive on JDITC, but does not require that a utility's interest expense be calculated without regard to the credit (i.e., as though capital generated by JDITC were supplied by other sources of capital reflected in the utility's capital structure). Rather, the preceding phrase strongly indicates that in other instances, JDITC is to be treated as "capital supplied by common shareholders." The imputation of interest to a portion of JDITC as though supplied by creditors does not treat that portion of JDITC as though supplied by common shareholders and, in addition, reduces the cost of service by more than a "ratable portion" of JDITC. For these reasons, the adjustment proposed by the Public Staff contravenes Section 46(f)(2) and the regulation thereunder.

The cases cited by the Public Staff do not persuade us to interpret Section 46(f)(2) otherwise because each of the cases completely ignores the clear requirement in the regulation to that Section that JDITC be treated as "capital supplied by common shareholders."

In the case of *Public Service Company of New Mexico v. Federal Energy Regulatory Commission*, 653 F. 2d 681 (D.C. Cir. 1981), the main issue before the court was whether capital provided by JDITC should receive the overall or common equity rate of return. The court concluded that, for purposes of determining the overall rate of return, JDITC could be treated as capital supplied by all capital suppliers in the same proportion as those suppliers existed in the capital structure of the utility, absent the credit. The court further held that excluding JDITC from the capital structure of the utility did not alter the debt/equity ratio such that the utility's interest expense deduction was increased, resulting in an additional, impermissible reduction in cost of service. No issue of imputing interest to JDITC was before the court.

That issue was before the court in *New England Power Company v. Federal Energy Regulatory Commission*, 668 F. 2d 1327 (D.C. Cir. 1981), *cert. denied*, --- U.S. ---, 102 S.Ct. 2928 (1982). However, in determining that the Federal Energy Regulatory Commission could require the utility to impute hypothetical interest to JDITC, the court relied on its earlier decision in *Public Service Company of New Mexico, supra*. Upon stating that, "[t]he question in this section is whether FERC may properly treat tax credit funds in relation to interest deduction in the same way it treats tax credit funds in relation to rate of return determination," the court quoted that portion of its earlier opinion in which it had approved the Federal Energy Regulatory Commission's treatment of JDITC as capital supplied by all capital suppliers in a proportionate manner *for purposes of determining the overall rate of return on capital.* As we have previously stated, the questions of how to treat JDITC for purposes of determining the overall rate of return on capital and for purposes of determining interest expense for ratemaking purposes are separate issues. The court in *New England Power Company* did not treat them as such and failed to analyze in any way the tax laws or the arguments supporting the impermissible nature of the adjustment.

In *Union Electric Company v. Federal Energy Regulatory Commission,* 668 F. 2d 389 (8th Cir. 1981), the third case cited by the Public Staff, the court again relied upon that portion of the regulation under Section 46(f)(2) which permits a ratemaking agency to assign the "overall cost of capital rate (determined without regard to credit)" to JDITC and ignored the remainder of the regulation. Reasoning that because the regulation allows JDITC to be "treated like other capital" in one instance, the court concluded that the regulation should be interpreted to allow such treatment on the interest deduction issue as well. In our opinion, such reasoning contravenes the clear requirement of Section 46(f)(2)(A) that only a "ratable portion" of JDITC be flowed through to customers and of Treas. Reg. Section 1.46-6(b)(3)(ii) that JDITC be treated as "capital supplied by common shareholders," and we decline to follow it.

The final argument advanced by the Public Staff in support of imputing hypothetical interest to JDITC is that ratepayers are entitled to the additional benefit that would enure to them as a result of imputing interest to a portion of JDITC because they supplied the capital produced by JDITC by paying rates computed without regard to the tax credit (other than the ratable portion flowed through to them). We disagree. Without regard to the credit, a utility owes a certain amount of taxes at the end of its tax year upon which its rates are based. The credit essentially forgives or returns to the utility a portion of the taxes owed by it if certain capital assets have been purchased during the tax year. As such, the capital generated by JDITC comes from the Treasury of the United States, not the ratepayers of the qualifying utility.

Based upon the express language of Section 46(f)(2) and the regulation thereunder, as well as a consideration of the history and purpose of JDITC, that being primarily to benefit the utility so as to stimulate investment and thereby increase employment and additionally to share a ratable portion of the credit with ratepayers, we affirm the decision of the Commission to exclude all imputed interest expense related to JDITC in determining CT&T's income tax expense for ratemaking purposes.

The order of the Utilities Commission is

Affirmed.

Judges ARNOLD and HILL concur.