[No. 33292.   Department Two.   June 23, 1955.]

THE STATE OF WASHINGTON, *on the Relation of Pacific Inland Tariff Bureau et al., Plaintiff,* v. RAYMOND W. CLIFFORD, *Judge of the Superior Court for Thurston County, Respondent.*[1]

[1]Reported in 285 P. (2d) 569.

*Henry T. Ivers,* for relators.

*Roger J. Crosby, Charles F. Hanson, R. Paul Tjossem (Roy F. Shields* and *Fletcher Rockwood,* of counsel), for respondent.

HAMLEY, C. J.—The proceeding now before us is an outgrowth of the longstanding competition between certain railroads, motor carriers, and barge lines, in the transportation of petroleum products in bulk. This competition once before led to litigation which reached this court. See *State ex rel. Bohon v. Department of Public Service,* 6 Wn. (2d) 676, 108 P. (2d) 663.

The present controversy had its inception in December, 1952, when the railroads filed with the public service commission of the state of Washington tariff supplements naming reduced rates for bulk petroleum. After a hearing, the commission entered an order approving in part and condemning in part the proposed rate reductions. The competing groups of carriers each appealed to the superior court. Following a hearing, the court, on February 21, 1955, reversed the order and remanded the matter to the commission for further proceedings.

Without awaiting the outcome of such further proceedings, the railroads immediately began charging the reduced rates which were in issue. The competing motor carriers and barge lines, together with the commission, then petitioned the superior court to restore and maintain the *status quo* as to rates, pending the outcome of the further proceedings before the commission. On March 14, 1955, the court entered an order denying the petition. This was done on the ground that the court lacked jurisdiction to grant the relief requested. The denial of this petition is now before us for review on a writ of certiorari.

The first question presented is whether the form of the decree of February 21, 1955, as entered, entitled the railroads to place the reduced rates in effect without awaiting

the outcome of further commission proceedings. Consideration of this question calls for a step by step analysis of the proceedings before the commission and the court.

The tariff supplements naming the reduced railroad rates in question were filed with the commission on December 5 and 31, 1952. By their own terms, these supplements were to become effective January 10 and February 1, 1953, respectively. Before these effective dates, however, the commission suspended the supplements for the maximum period of seven months authorized by statute. See RCW 81.04.130 [*cf*. Rem. Supp. 1941, § 10424]. The effective dates of the supplements were thus postponed until August 10 and September 1, 1953, respectively.

During this suspension period, the commission entered into a co-operative hearing with the interstate commerce commission, which was faced with a parallel interstate rate problem. The hearing commenced on March 30, 1953, and continued for eight days. On August 4, 1953, the state commission wrote to the railroads, asking them to voluntarily postpone the effective date of the tariff supplements. In this letter, the railroads were advised that the commission would not be able to reach a decision prior to the then specified effective dates of the supplements. Complying with this request, and in order to prevent the reduced rates from taking effect prior to the issuance of such decision, the railroads voluntarily postponed these effective dates until December 22, 1953.

On November 25, 1953, the interstate commerce commission issued its report and order finding the proposed reductions in interstate railroad rates just and reasonable and permitting them to become effective. *Petroleum in North Pac. Coast Territories*, 291 I. C. C. 101, affirmed on rehearing, 292 I. C. C. 317.

On December 18, 1953, the state commission entered its order. It found that the railroads had not sustained their statutory burden (RCW 81.04.130, *supra*) of proving that the proposed rates are just and reasonable for statewide application. To the extent that such reduced rates were necessary to maintain parity between Portland and Puget

sound points on shipments to specified points in eastern Washington, however, they were found to be within the zone of reasonableness. Pursuant to these findings, the commission, in this order, permitted the reduced rates to become effective between the designated parity points, and prohibited the rate reduction as to all other intrastate railroad transportation of bulk petroleum.

Had the proceedings ended at this point, the railroads could have put into effect, as of December 23, 1953, reduced petroleum rates to the limited extent approved by the commission in its order of December 18, 1953. However, on the day when this order was entered, the motor carriers and barge lines applied to the superior court for a writ of review. At the same time, they asked the court for an order superseding the parts of the commission order which were adverse to their interests, and restraining the commission and railroads from putting reduced rates into effect "until the court can determine this cause."

The writ of review was issued on December 18, 1953. The request for a supersedeas and restraining order came on for hearing on December 21 and 22, 1953, under the three-day notice procedure specified in RCW 81.04.180 [cf. Rem. Rev. Stat. (Sup.), § 10429]. At the conclusion of this hearing, the court orally entered such an order. A formal order confirming this oral order was entered on January 11, 1954.

The result was that the right of the railroads to place the reduced rates in effect was again postponed until "the final hearing and determination of this cause unless sooner altered, amended, or terminated by further order of this court." In the meantime, on January 4, 1954, the railroads applied for and received a writ of review covering that part of the commission order which was adverse to their interests. A supersedeas covering this part of the commission order was entered on January 7, 1954, "until further order or judgment of the court in this proceeding."

The two review proceedings were consolidated for trial, and soon came on for hearing. Thereafter, on February 21,

1955, the court entered an order containing the following decretal provisions:

"It is ORDERED, ADJUDGED and DECREED:

"1. That the findings made by the Commission in its Cause No. T-8917 do not support the order of the Commission in said cause, wherein the Commission in said order approved the proposed reduced rates involved in said proceeding to points in Eastern Washington, but denied the proposed reduced rates between points in Western Washington.

"2. That the findings of the Commission in said order are hereby neither approved nor disapproved and it is not the intent of this decree to limit the action of the Commission in reconsidering said order, but that the Commission shall be free upon rehearing or reconsideration of its order in Cause No. T-8917 to enter new and/or additional findings based upon the record made or to be supplemented as the Commission may provide.

"3. It is further ORDERED, ADJUDGED and DECREED that the Commission's order in Cause T-8917 under review be reversed and remanded to the Commission for further proceedings in accordance herewith.

"It is further ORDERED, ADJUDGED and DECREED that the supersedeas and restraining orders and bonds entered in Causes No. 27757 and 27772 be and the same are hereby dissolved and exonerated."

Both the plaintiffs (motor carriers and barge lines) and the railroads agree that the effect of this decree was to nullify, vacate, and set aside the commission order of December 18, 1953. Both agree that the result is that the railroads and the commission were thus immediately restored to the same status which they occupied prior to the entry of the commission order.

As we have seen, immediately prior to the entry of the commission order, the situation was that the reduced rates would go into effect on December 23, 1953. It would therefore seem that, in view of the fact that when the decree was entered the old deadline of December 23, 1953, had passed, the railroads, immediately upon the entry of such decree, were free to apply the reduced rates.

Indeed, it would appear that the railroads were then compelled to charge the reduced rates named in the sup-

plements duly on file. *Wolverton Auto Bus Co. v. Robinson,* 151 Wash. 67, 274 Pac. 1056; *Robinson v. Wolverton Auto Bus Co.,* 163 Wash. 160, 300 Pac. 533. It was then too late for the railroads to voluntarily suspend the tariffs for a further period, because they were already in effect. The railroads could have filed new supplements withdrawing the reduced rates, but this would have rendered the further commission proceedings moot. In order to obtain a ruling on the reduced rates, the railroads would have been required to file new supplements proposing such reductions. The new filings would have been subject to a seven-month suspension, and the whole controversy would have started over again.

Plaintiffs, however, advance several reasons why, in their opinion, the decree of February 21, 1955, did not give the railroads the right or duty to apply the reduced rates.

First, it is contended that the railroads were denied that right because the effect of the decree of February 21, 1955, was to revoke, undo, annul, and overthrow the commission order.

We agree that this was the effect of the decree. As has been indicated above, however, this served only to remove the only legal barrier which then prevented the railroads from applying the reduced rates.

The fact that the matter was also remanded to the commission for further proceedings does not alter the case. The mere pendency of a commission proceeding does not, of itself, operate to suspend tariffs which are duly filed and otherwise effective. This is demonstrated by the fact that, in this case, the reduced rates would have gone into effect in August and September, 1953, notwithstanding the pendency of the proceeding, had not the railroads voluntarily suspended their application for a further period. See RCW 81.04.130, *supra.*

Plaintiffs contend, however, that, although the reversal and remand returned the parties to the position in which they stood prior to the entry of the commission order, a court sanction still continued in effect, which forestalled application of the reduced rates. This contention seems to

be internally inconsistent, since the position in which the parties stood prior to the commission order was that they were free and clear of any court-imposed restraint.

The only specific court sanction to which plaintiffs point as being in effect after the reversal and remand is a provision of the supersedeas and restraining order of January 11, 1954. This provision required the parties to maintain the rates in *status quo* "until further order of the court, or until the hearing of this matter on the merits shall have been concluded." Plaintiffs argue that the hearing of this matter on the merits has not been concluded, but is now pending before the commission. They further assert that this provision of the January 11, 1954, order has never been changed, modified, vacated, or set aside.

It will be observed that this supersedeas and restraining order is to remain in effect until either one of two things occurs—the entry of a further order, or the conclusion of the hearing on the merits. The first of these alternatives has occurred. Contrary to plaintiffs' assertion, the court did enter a "further order" setting aside the supersedeas and restraining order. The final paragraph of the decree of February 21, 1955, quoted above, expressly provides that the "supersedeas and restraining orders and bonds" in these consolidated cases "are hereby dissolved and exonerated." There has been no restraining order in effect since that date.

We therefore need not consider, on this branch of the case, whether, in view of the remand for further commission proceedings, the "hearing on the merits," as those words are used in the supersedeas and restraining order, has been "concluded." Assuming that the hearing on the merits was not concluded, the fact remains that the supersedeas and restraining order was expressly dissolved.

Plaintiffs call attention to a recital in the court's order of March 14, 1955 (now under review), to the effect that the action of the railroads in putting the reduced rates into effect "is in violation of and renders virtually nugatory" the decree of February 21, 1955.

Such a recital may be important in determining whether a judgment should be modified to conform to the actual

intent of the trial court. Our present inquiry, however, is directed to the form of the decree as actually entered. Where, as here, the decree is plain and unambiguous with respect to the point in issue, we must accept the words used in the decree as expressing the intent of the trial court.

We therefore conclude that the form of the decree of February 21, 1955, as entered, entitled the railroads to place the reduced rates in effect without awaiting the outcome of further commission proceedings. It follows that no question is presented as to whether the trial court, in such review proceedings, has continuing jurisdiction to enforce a decree already entered, or whether jurisdiction to enter such an enforcement order was here properly invoked.

The second question presented is whether the trial court erred in failing to modify its decree of February 21, 1955, to specifically provide that the *status quo* as to rates be maintained. In their petition, plaintiffs asked, in the alternative, for such relief.

The trial court erred in this regard only if (1) in such a review proceeding, the trial court may continue such a restraining order in effect pending further proceedings before the commission; (2) the trial court actually had such an intention at the time the decree was entered; and (3) plaintiffs proceeded in the proper manner to obtain such a modification.

We turn to the first of these subquestions. In a proceeding to review such a commission order, the trial court may not continue such a restraining order in effect pending further proceedings before the commission, unless (a) there is statutory authority to continue such court restraint, or (b) the court has implied or inherent power to do so.

With respect to statutory authority, Laws of 1933, chapter 165, § 6, p. 605 [*cf.* RCW 81.04.180; Rem. Rev. Stat. (Sup.), § 10429] provides that the pendency of any writ of review shall not of itself stay or suspend the operation of the order of the department of public works (now public service commission). This section further provides that the court, in its discretion, may "restrain or suspend," in whole or in part,

the department's order "pending the final hearing and determination of the suit." (RCW substitutes the word "cause" for "suit.")

The statutory authority to enter such a supersedeas or restraining order is therefore limited to the period during which the matter is pending in court. An earlier version of this statute was so construed in *Great Northern R. Co. v. Public Service Comm.*, 69 Wash. 579, 125 Pac. 948. We there characterized the statute as authorizing a restraining or suspension order *"pendente lite."*

Plaintiffs argue that this matter is still pending in the trial court, notwithstanding the reversal and remand to the commission, and that, this being so, that court has statutory authority to continue the restraining order in effect. Plaintiffs' position in this regard is also broad enough to include the proposition that, if the form of the decree of February 21, 1955, did not actually preserve trial court jurisdiction, it could and should have been modified to establish such continuing court jurisdiction.

Both of these propositions are necessarily premised upon the view that the trial court, in review proceedings of this kind, has authority to reserve continuing jurisdiction after remanding the matter to the commission for further action.

In support of the view that the decree of February 21, 1955, was not, or need not have been, a final appealable order terminating the court action, plaintiffs rely upon *State ex rel. Smith v. Superior Court*, 71 Wash. 354, 128 Pac. 648. In that case, we were dealing only with the question of whether a judgment of this court was a final judgment which left the trial court no discretion. We stated, in effect, that it is only where further proceedings are directed by this court that its judgment is not final. We did not state or imply that, if this court remanded a cause for further proceedings, the cause would still be pending before this court.

In *Reif v. LaFollette*, 19 Wn. (2d) 366, 142 P.. (2d) 1015, also cited by plaintiffs, we declined to entertain an appeal from an interlocutory decree in an action for an accounting. This case is not in point, since the accounting order was specifically labeled an interlocutory decree, provision being

made for later entry of a final decree after further proceedings before *that* court. There was no remand to any other tribunal for further proceedings.

In *Ford Motor Co. v. N. L. R. B.*, 305 U. S. 364, 83 L. Ed. 221, 59 S. Ct. 301, a third case cited by plaintiffs, it was held that the circuit court of appeals could remand an order of the national labor relations board, upon the latter's representation that it would then set aside the order and enter into further proceedings. It was held that such a remand does not dismiss or terminate the *administrative* proceeding. It was not held, however, that, after such remand, the circuit court of appeals retained jurisdiction of the cause.

The other decisions cited by plaintiffs on the question now under consideration have been examined and have been found to be equally inapposite.

█ Turning to an analysis of the applicable statutes, we are convinced that such a decree is appealable. It is a kind of court action which is authorized by RCW 81.04.170 [*cf.* Rem. Rev. Stat. (Sup.), § 10428], and all such court actions are appealable, under RCW 81.04.190 [*cf.* Rem. Rev. Stat., § 10430]. In *West Coast Tel. Co. v. Department of Public Works*, 175 Wash. 301, 27 P. (2d) 323, we entertained an appeal from a judgment reversing and remanding such an agency order.

Since a decree of this kind is appealable, it necessarily terminates the court cause and divests the trial court of jurisdiction. Following a remand to the commission, if there is to be a court review of the commission's further actions, it must be initiated by a new writ of review. This was the procedure we provided for in *State ex rel. Puget Sound Nav. Co. v. Department of Public Works*, 164 Wash. 237, 242, 2 P. (2d) 686. We there reversed a trial court judgment in such a review proceeding, with directions to remand it to the department for further findings and order "from which, as provided by statute, review proceedings may be had by anyone aggrieved."

█ We therefore hold that, in so far as the statutory authority for court suspension or restraint of filed tariffs is concerned, the court is without power to continue in effect

such suspension or restraint after the cause has been remanded to the commission.

■ Plaintiffs contend, however, that the trial court has broad inherent and implied equity powers, unfettered by the statute in question, which enable it to maintain the *status quo* pending the completion of the commission proceeding.

In support of this view, our attention is called to a number of state constitutional and statutory provisions concerning the equity jurisdiction of the superior courts, the implied powers which they may exercise, and the compulsion which is placed upon judges to render justice without unnecessary delay. Numerous decisions are also cited. It is argued that the inherent and implied powers available to superior courts in general are available in review proceedings of this kind, except as specifically limited by the statute.

We quite agree. It is our view, however, that the statute providing for court suspension or restraint in proceedings of this kind constitutes a specific limitation upon the power of the court. Stated differently, where, as here, the limits of the reviewing court's authority are so definitely spelled out in the statute, the power thus conferred marks the limits of that which may be exercised. As we said in *Puget Sound Nav. Co. v. Department of Public Works,* 152 Wash. 417, 278 Pac. 189, the jurisdiction of the courts in cases such as this "is derived from the statute."

The decisions cited by plaintiffs, many of them from other jurisdictions, do not support a contrary view. They point up the broad equity powers possessed by courts in general, and in review proceedings of this kind. They clearly establish that such a reviewing court may maintain the *status quo* while the matter is pending in court, and may enforce its lawful orders once they are entered. But none of these cases stands for the proposition that such a court may continue a restraint in effect when, under such a statute as ours and without deciding the case on the merits, it terminates the court proceeding and remands the matter to the commission.

Plaintiffs urge that, unless the *status quo* is maintained pending the outcome of the commission proceedings, the

purpose of the proceeding will be destroyed, and irreparable injury will be visited upon them.

In the absence of statutory limitation, we sometimes measure a court's power to act by what is needed to attain a just result. But consideration of what ought to be done is not always an accurate gauge of what can be done. It is no test at all where, as here, the legislature has specified just what the court may do.

The trial court did not err in declining to modify the decree in the respect requested. It is therefore unnecessary for us to determine whether the trial court intended such a continuing restraint at the time the decree was entered, or whether plaintiffs have proceeded in the proper manner to obtain such a modification.

What is said above also disposes of plaintiffs' final argument. It is urged that the trial court erred in failing to enter a new and independent order reinstating the injunction which had been dissolved. We have held that the court was without power to enter such a continuing injunction in the first instance. It follows that the same result could not be accomplished by reinstating the *pendente lite* restraining order and providing for its continued effectiveness.

The order of March 14, 1955, is affirmed.

OTT, DONWORTH, WEAVER, and ROSELLINI, JJ., concur.