No. 49,768

SOUTHWESTERN BELL TELEPHONE COMPANY, *Appellee,* v. THE STATE
CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellant.*

(597 P.2d 633)

Opinion filed July 14, 1979.

*Robert F. Lytle,* of Lytle, Wetzler, Winn & Martin of Prairie Village, special staff counsel for the Kansas Corporation Commission, argued the cause, and *Brian J. Moline,* General Counsel for the Kansas Corporation Commission, was with him on the brief for the appellant.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Robert L. Howard,* of the same firm, *Lawrence A. Dimmitt,* of Southwestern Bell Telephone Company, and *Thomas D. Herlocker,* of Roberts and Herlocker, of Winfield, were with him on the brief for the appellee.

The opinion of the court was delivered by

McFARLAND, J.: Southwestern Bell Telephone Company (Bell) filed an application for judicial review of an April 5, 1977, final rate order issued by the State Corporation Commission (Commission). On December 14, 1977, the district court sustained Bell's motion to stay in part the effect of the order, pending determination of the merits of the judicial review application. The Commission appeals from the stay order. The issues on appeal relate to the burden of proof required for obtaining a stay order pursuant to K.S.A. 66-118g.

K.S.A. 66-118g (in the form in effect at the time) provided:

"The filing or pendency of the application for review provided for in this act shall not in itself stay or suspend the operation of any order or decision of the

commission, but, during the pendency of such proceeding the court, in its discretion, may stay or suspend, in whole or in part, the operation of the order or decision of the commission. No order so staying or suspending an order or decision of the commission shall be made by any court of this state otherwise than on five days' notice and after a hearing, and if a stay or suspension is allowed the order granting the same shall contain a specific finding, based upon evidence submitted to the court and identified by reference thereto, that great or irreparable damage would otherwise result to the petitioner and specifying the nature of the damage."

The trial court, in a thirty-page opinion, granted the stay and found as follows:

"It is apparent from what has been said heretofore that the ruling of the court is to sustain the motion of applicant to stay in part the final order of the Commission dated April 5, 1977. The Court finds specifically, as required by K.S.A. 66-118g, that great or irreparable damage would result to applicant if the Court should refuse to stay the operation of the order of the commission. The evidence upon which this finding is based is found in the testimony of Stanley H. Clough, General Manager of applicant for Kansas, appearing at p. 48 of the transcript of the proceedings had on October 18, 1977, in which it was established that there was no method by which applicant might collect revenues resulting from additional rates granted as a result of successful prosecution of the application for judicial review. It probably need not be reiterated that the Court has also found that the application for judicial review raises substantial questions of fact and law regarding the reasonableness of the determinations by the Commission which form the basis of the order determining allowable rates."

The Commission contends the findings of the trial court are insufficient to grant the stay in two respects. First, the bare fact that revenues once lost cannot be recovered is insufficient as a matter of law to constitute "great or irreparable damage"; and second, there is no finding that the utility had a reasonable probability of prevailing at the trial of the case on the merits. Bell contends the trial court made all findings required by K.S.A. 66-118g.

We will first determine the "great or irreparable damage" question. The Commission argues the trial court's decision on this point makes a nullity of the statute. The Commission contends that whenever a public utility receives less than it asks for, then seeks judicial review, the utility can always show that if it ultimately prevails the revenues are forever lost.

In support of this argument the Commission relies heavily on *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission*, 217 Kan. 604, 538 P.2d 702 (1975). *Kansas-Nebraska* arose from an order of the Commission denying the utility's application

for interim rate relief. The power of the Commission to grant emergency interim rate relief was not specified by statute, but was held to be within the Commission's broad authority. K.S.A. 66-118g was not involved in the case. Notwithstanding this fact, the Commission argues that some of the language in this case supports its position. In *Kansas-Nebraska,* Syl. ¶ ¶ 1-5, we held:

"1. The state corporation commission has authority to fix interim or temporary rates for public utilities regulated by it.

"2. A standard that a public utility applicant for interim rate relief must show it is in such position that if the requested relief is not granted it will not be able reasonably to serve its customers, meet day by day operating expenses or meet its current payroll expenses is too stringent a standard in the determination of just and reasonable rates.

"3. The determination as to whether a situation warrants the grant of interim rate relief to a public utility rests in the sound discretion of the corporation commission within the perimeter of reasonableness and justice to the utility and those served by it.

"4. Whether an interim rate should be granted pending final decision on an application for change in rates should ordinarily depend on whether irreparable harm would result to the utility by reason of a distinctive and sudden deficiency in revenue which is not subject to recovery.

"5. An applicant for interim rate relief has the burden of making a prima facie showing that its current rates are no longer just and reasonable, using acceptable methods of accounting procedures in determining and allocating costs and rate bases."

Bell argues the Commission's interpretation of great or irreparable harm would require the utility to be "dead in the water" before a stay could be granted. By this, Bell means that unless the utility could show that it could no longer operate unless relief were granted, then it could have no stay. Such requirement was specifically rejected by this court in Syllabus 2, above stated, in a case where nonstatutory relief was involved. K.S.A. 66-118g, with which we are involved, simply requires a showing of "great or irreparable damage" to the utility if it ultimately prevails. A substantial sum is involved that would be irretrievably lost should the utility ultimately prevail on the merits of the case.

The Commission's argument that the statute would become a nullity if a showing of loss of revenue alone is sufficient is without merit. In certain situations loss of revenue could be highly speculative. Likewise, judicial review of a rate order could involve other factors besides lost revenue. For instance, Bell could have objected, not to the amount of revenue allowed, but to the rate spread.

The interests of the public were protected by K.S.A. 66-118h (in the form in effect at the time) which provided:

"In case the order or decision of the commission is stayed or suspended, the order or judgment of the court shall not become effective until a suspending bond shall have been executed and filed with and approved by the court, payable to the people of the state of Kansas, sufficient in amount and security to secure the prompt payment, by the party petitioning for the stay, of all damages caused by the delay in the enforcement of the order or decision of the commission, and repayment of all moneys which any person, firm, corporation or any organization or association of any kind or character may be compelled to pay for any service in excess of the charges fixed by the order or decision of the commission in case such order or decision is sustained or in excess of the rate, fare, toll, rental, charge or classification finally established as lawful and reasonable if the order or decision be vacated or set aside, and in addition thereto or in lieu thereof the court granting a stay or suspending the order or decision of a commission in any manner affecting rates, fares, tolls, rentals, charges or classifications shall direct the petitioner to pay into court from time to time all sums of money collected from any person, firm or corporation in excess of the sum that such person, firm or corporation would have been compelled to pay if the order of the commission had not been stayed or suspended. The sums so paid into court shall be deposited, as the court may direct, in any bank, trust company or other depository paying interest on deposits.

"The court shall require the party collecting such sums to keep such records and issue such receipts as will facilitate the repayment of said sums to the proper persons, firm or corporations if the order or decision of the commission be sustained, or if the rate, fare, toll, rental, charge or classification finally established as reasonable or lawful be less than the sum collected. If the order or decision of the commission be sustained or if the rate, fare, toll, rental, charge or classification finally established as lawful and reasonable be less than the sum collected, the court shall require notice be given, by publication or otherwise, to the persons, firms or corporations entitled to be reimbursed and shall provide for the payment and distribution of such sums of money so impounded or due under the bond herein provided."

We hold the trial court's finding as to great or irreparable damage was supported by substantial competent evidence and was in compliance with the statutory requirements.

We turn now to the question of whether a utility seeking a stay under K.S.A. 66-118g must, in addition to showing great or irreparable damage, show a reasonable probability of prevailing at the trial of the case on the merits.

The Commission contends the question has been previously determined in its favor by this court's rulings in *Hayward v. State Corporation Commission,* 151 Kan. 1008, 101 P.2d 1041 (1940); and *Southwestern Bell Tel. Co. v. State Corporation Commission,* 192 Kan. 39, 386 P.2d 515 (1963).

*Hayward* stands for the proposition that a stay order under K.S.A. 66-118g is tantamount to an injunction and is therefore an appealable order. "Tantamount" is defined by Webster's New Collegiate Dictionary 1191 (1977) as "equivalent in value, significance, or effect." "Tantamount" does not mean "synonymous to" which is apparently the definition adopted by the Commission.

The earlier *Bell* case, cited by the Commission, involves two consolidated appeals. One appeal was on the merits of a rate proceeding—the other involves a stay order under K.S.A. 66-118g. The bulk of the lengthy opinion deals with the decision on the merits, which was reversed. The granting of the stay order was held to be erroneous. In so holding, this court (192 Kan. at 88) cited the following from 73 C.J.S., Public Utilities § 67, p. 1204:

" 'In order to warrant an injunction pendente lite it must appear that there is a reasonable probability that complainant will prevail on final hearing; and, where the matter is doubtful or where it is probable that a practical test will be required to ascertain the reasonableness of the order or regulation in question, such relief should be refused. So, where there is any doubt as to the proper exercise of the commission's discretion in making its order, as where the record presents a bona fide controverted issue of fact, a temporary injunction should not be granted. Injunctive relief in such case should not be granted except after a plenary trial of the issues on the merits.' "

The inclusion of the above citation in that case was improvident. Section 67 deals with the rights of the courts, *in the absence of statutory authority,* to supervise public utility commissions under general equitable principles, as illustrated on pp. 1196-97:

"The courts have no general supervisory power over public utility commissions, and, except as wider authority may be expressly delegated by statute, judicial interference with their orders by way of injunction must be grounded on some illegal encroachment on property rights. Thus, in accordance with the rule applicable to injunctions generally, a suit for an injunction to restrain the enforcement of an order of the commission will not lie in the absence of some ground for equitable relief. Where other remedies are inadequate a court of equity may take jurisdiction in order to prevent irreparable injury, but an injunction will not be issued if there is another adequate remedy available to complainant. Sufficient equity to support a suit to enjoin the enforcement of an order appears from a showing that, on a failure to comply therewith, the utility will be subject to penalties or to numerous actions for damages."

The trial court herein (and in the earlier *Bell* case) was not exercising general equity powers, but was proceeding under express statutory authority.

In further support of its contention that a showing of reasonable probability of success is required, the Commission cites *Mt'n States T & T v. Pub. Util.,* 176 Colo. 457, 463-64, 491 P.2d 582 (1971), as follows:

"In our view, it is elemental that a trial court should have before it a substantial basis for granting any injunction which would place upon the public the burden of higher public utility rates, when such higher rates have been rejected after an administrative hearing before the agency which has been vested with the authority, and presumably, has the expertise to fix such rates. Even upon a substantial showing of probable success in ultimately establishing that the rate authorized is unjust, unreasonable, and even confiscatory, the sanction of any equitable relief, should properly be directed to the administrative agency to permit and set such higher rates as will be deemed to be more consistent with fairness and reasonableness than the current rates under challenge. Thus, the court may not necessarily order an increase to the full extent requested by the public utility."

Colorado had a stay statute in effect very similar to our own. Colo. Rev. Stat., 1969 Supp. § 115-6-16 (now § 40-6-116). However, its applicability was not argued by counsel and the matter was determined on general rules relative to injunctive relief.

K.S.A. 66-118g is a specific statute authorizing a trial court to grant a stay in this particular type of case upon a specific finding, "based upon evidence submitted to the court and identified by reference thereto, that great or irreparable damage would otherwise result to the petitioner and specifying the nature of the damage." The statute is clear and there is no indication that the legislature intended the inclusion of the additional requirement that the utility must show reasonable probability of success on the trial of the merits. We must conclude that such a showing is not required.

It should also be noted that, as to both issues on appeal, under the 1978 amendment to K.S.A. 66-118g if the Court of Appeals fails to enter a final order within 180 days after the filing of the application for judicial review the stay is to be automatically entered by the court upon request of the utility. In this event, there is no requirement of even showing great or irreparable damage.

In this opinion we have deliberately excluded any references to the precise monetary amount involved. The omission arises by virtue of certain inconsistencies among the amount of additional revenues sought in the motion for partial stay, the reasons for the

requested amount, and the amount of additional revenues allowed under the stay order. This data is not relevant to the limited issues before us on appeal and would add confusion.

No error having been shown, the judgment is affirmed.