[No. 50995–6.   En Banc.   September 19, 1985.]

GENERAL TELEPHONE COMPANY OF THE NORTHWEST, INC.,
*Respondent,* v. THE UTILITIES AND
TRANSPORTATION COMMISSION,
*Petitioner.*

*Kenneth O. Eikenberry, Attorney General,* and *James R. Cunningham* and *Robert Daniel Cedarbaum, Assistants,* for petitioner.

*L. Russell Mitten II* (*Marilyn B. Vogel,* of counsel), for respondent.

CALLOW, J.—The Washington Utilities and Transportation Commission appeals a supersedeas order that permits the General Telephone Company of the Northwest (GTNW) to charge higher interim rates than the Commission had allowed. The Commission argues that (1) the Superior Court engaged in ratemaking, thereby exceeding the scope of its statutory authority to grant interim relief; and (2) the supersedeas order failed to meet the statutory

requirements.

The essential facts are undisputed. GTNW filed for a $47,623,000 rate increase on October 1, 1982. The Commission suspended the increase on October 20 and reviewed the need for the increase with an earlier $1,649,000 filing. Thus, the total requested increase before the Commission was $49,272,000. After extensive hearings, the Commission rejected the proposed increases as excessive. It allowed an increase of $4,816,665. GTNW unsuccessfully moved for reconsideration on September 6, 1983.

GTNW sought judicial review in King County Superior Court on October 20, 1983. It appealed on three grounds irrelevant to this appeal. The company also requested a supersedeas order that authorized an interim rate increase of $8,273,000 per annum. The increase represented the amount to which GTNW allegedly would be entitled during the appeal period if its appeal succeeded. In support, GTNW submitted the affidavit of J. Pat McGee, its general accounting manager. McGee stated that if GTNW were not allowed to collect the $8.3 million, it would suffer "great and irreparable harm."[1] The harm would result from the prohibition against retroactive rate collection. McGee also promised that GTNW would refund all interim rates collected, with interest, if the appeal failed. GTNW did not file a bond or other security with the court. The Commission did not controvert the affidavit.

The trial court allowed GTNW to charge the higher interim rates. It issued a supersedeas order on December 8, 1983, that stated, in pertinent part:

[GTNW] has shown through the affidavit of J. Pat McGee that it will suffer great or irreparable damage if the effect of [the Commission's order] is not stayed or suspended during the pendency of the appeal of Cause No. U-82-45. The nature of the damage is that petitioner

---

[1]This decision considers only a nonconfiscatory rate increase. GTNW failed to raise a confiscation challenge at trial, and the statute mentions nothing of confiscation. Thus, the parties' citations to confiscation cases from other jurisdictions are of limited value here.

will be denied rates and revenues associated with the issues on appeal, and that these rates and revenues cannot be recovered retroactively if petitioner's position prevails on appeal.

The court further finds [GTNW] has demonstrated the ability to provide adequate security for the repayment of all amounts collected pursuant to this order if respondent ultimately prevails on this appeal. This security is in the form of a surcharge tariff which provides for a full refund to customers of all surcharge revenues, with accrued interest at the rate prescribed by law, if the issues contested in its appeal are decided in favor of [the Commission].

The court did not consider the Commission's record or the merits of GTNW's case.

The Commission asked for discretionary review by the Court of Appeals which accepted review pursuant to RAP 2.3(b). The case subsequently was certified to this court under RCW 2.06.030(d).

The first issue is whether the Superior Court exceeded the scope of the supersedeas statute by authorizing GTNW to charge increased interim rates.

The resolution of this appeal depends on the interpretation of the supersedeas statute, RCW 80.04.180, which provides:

Supersedeas. The pendency of any writ of review shall not of itself stay or suspend the operation of the order of the commission, but *the superior court in its discretion may restrain or suspend, in whole or in part, the operation of the commission's order pending the final hearing and determination of the suit.*

No order so restraining or suspending an order of the commission relating to rates, charges, tolls or rentals, or rules or regulations, practices, classifications or contracts affecting the same, shall be made by the superior court otherwise than upon three days' notice and after hearing, and *if a supersedeas is granted the order granting the same shall contain a specific finding, based upon evidence submitted to the court making the order, and identified by reference thereto, that great or irreparable damage would otherwise result to the petitioner, and specifying the nature of the damage.*

In case the order of the commission under review is superseded by the court, it shall require a bond, with good and sufficient surety, conditioned that such company petitioning for such review shall answer for all damages caused by the delay in the enforcement of the order of the commission, and all compensation for whatever sums for transmission or service any person or corporation shall be compelled to pay pending the review proceedings in excess of the sum such person or corporations would have been compelled to pay if the order of the commission had not been suspended.

*The court may, in addition to or in lieu of the bond herein provided for, require such other or further security for the payment of such excess charges or damages as it may deem proper.*

(Italics ours.)[2] The statute first appeared in 1911, and was enacted in its present form in 1961. Virtually no legislative history exists, and no recent case law has construed it.

The Commission argues that the Superior Court usurped agency authority. It asserts the supersedeas order runs counter to the Commission's administrative delegation of power to set and suspend rate increases, RCW 80.36.130 and .140, and the rule that an agency's findings are prima facie correct, RCW 80.04.430.

■ We disagree. The statutes the Commission cites are general rules for appeal of agency decisions. The supersedeas statute addresses a specific situation: the prevention of "great or irreparable damage" to an entity while an appeal is pending. The specific statute supersedes a general statute when both apply. *E.g., State v. Shriner*, 101 Wn.2d 576, 580, 681 P.2d 237 (1984); *Hartig v. Seattle*, 53 Wash. 432, 437, 102 P. 408 (1909); 2A C. Sands, *Statutory Construction* § 51.05 (4th ed. 1973).

The Commission further claims that the Superior Court acted beyond the scope of RCW 80.04.180. The statute allows the court only to "restrain or suspend" the Commis-

---

[2]The supersedeas statute here is specifically for appeal of agency utility rate determinations. It should be distinguished from the more general supersedeas provisions, RAP 8.1–8.6.

sion's order. The order allowed GTNW a $4.8 million increase, and is still effective. The court also allowed a rate increase of an additional $8.3 million. That increase allegedly represents unauthorized judicial ratemaking. Under the Commission's interpretation, the only application of RCW 80.04.180 arises when the Commission's order reduced telephone rates.

■ The Commission's theory does not consider the entire utility rate increase procedure and the actual effect of the order in that scheme. The utility commences the ratemaking process by filing with the Commission for a rate increase. RCW 80.04.130(1). The Commission has the power to suspend the rate increase for up to 10 months, while hearings are pending. The utility bears the burden of proof to justify the need for an increase. RCW 80.04.130(2). The Commission has the power to determine what constitutes a reasonable rate increase, if any. RCW 80.04.130(1). If it finds the rate unreasonable, it may vacate the increase and set a reasonable rate. RCW 80.36.140. If the Commission fails to vacate the increase, or fails to act within the 10–month period, the full increase takes effect. *See State ex rel. Pac. Inland Tariff Bur. v. Clifford,* 46 Wn.2d 807, 812, 285 P.2d 569 (1955). Thus, the Commission's order in this case had two components: (1) the permanent elimination of the $49.3 million increase, and (2) a substitute increase of $4.8 million. *See Alaska Pub. Utils. Comm'n v. Greater Anchorage Area Borough,* 534 P.2d 549, 542–53 (Alaska 1975); *Department of Pub. Utils. v. New Eng. Tel. & Tel. Co.,* 325 Mass. 281, 90 N.E.2d 328 (1950).

The Superior Court, therefore, had the power to "restrain or suspend" *either or both* actions that comprised the Commission's order. The court chose to restrain, in part, the effect of the permanent suspension of the $49.3 million increase. It allowed an interim annual increase of $8.3 million while the appeal is pending. The statute clearly authorizes such an action if the other requirements are

met.[3] The Kansas Supreme Court reached the same result with a virtually identical statute and similar facts in *Southwestern Bell Tel. Co. v. State Corp. Comm'n,* 226 Kan. 234, 597 P.2d 633 (1979). In doing so, the court held that a utility has made a sufficient showing that "great or irreparable damage" would result if it shows that unless the interim relief is granted a substantial sum will be irretrievably lost. The court specifically rejected any requirement that before being entitled to interim relief the utility had to show that it could not reasonably serve its customers or meet operating expenses unless such relief was granted. The court also concluded that the utility would not be required to show a reasonable probability of prevailing on the merits of the case.

■■ The same conclusion follows from an analysis of the supersedeas order as an injunction pendente lite. The court only has the power to suspend or restrain a Commission order based on the status quo ante. The question then becomes the measuring point for the status quo ante. The Commission argues that the relevant point is immediately before GTNW filed for a rate increase. The company responds that the status quo ante occurred immediately before the Commission suspended the order.

The status quo ante in Washington is "the last actual, peaceable, noncontested condition which preceded the pending controversy". *State ex rel. Pay Less Drug Stores v. Sutton,* 2 Wn.2d 523, 529, 98 P.2d 680 (1940) (quoting 1 J. High, *Injunctions* § 5a, at 10 (4th ed. 1905)).

We defined the status quo for a similar supersedeas stat-

---

[3]The Commission's argument that the statute applies only to a rate reduction is contrary to the statutory language and policy. The statute mentions no restrictions on the superior court's discretionary authority to act on orders based on whether the order authorizes higher or lower rates. Construing such a restriction would exclude from statutory protection two entities that may suffer "great or irreparable damage": (1) consumers harmed by a Commission order authorizing excessive and burdensome rate increases; or (2) utilities that would be financially unable to survive if a rate increase were too small. We will not restrict the applicability of the statute absent some clear statutory or policy rationale.

ute, former RCW 81.04.180,[4] in *State ex rel. Pac Inland Tariff Bur. v. Clifford, supra.* In *Clifford,* several railroad companies filed for a rate reduction to stimulate competition with trucking firms and barge lines. The Public Service Commission after a hearing suspended the reduction in part and affirmed it in part. *Clifford,* at 809.

The competing carriers appealed the Commission's decision to the Superior Court, which reversed and remanded the order in part. The railroads then charged the lower rates they had requested initially. The competing carriers obtained a supersedeas order pursuant to former RCW 81.04.180. The court subsequently vacated the Commission's order. *Clifford,* at 811. The parties and this court agreed that the vacation of the Commission's order returned the parties to the status quo ante. At that point the railroad's revised rate schedule was in effect.

This court held that the status quo definition permitted the lower rates. The court stated:

> As we have seen, immediately prior to the entry of the commission order, the situation was that the reduced rates would go into effect on December 23, 1953. It would therefore seem that, in view of the fact that when the [superior court] decree was entered the old deadline of December 23, 1953, had passed, the railroads, immediately upon the entry of such decree, were free to apply the reduced rates.

*Clifford,* at 811.

Just as the filed rate reductions in *Clifford* represented the status quo ante, the rate increase represents the status quo ante in this case. The rate increase filing was "peaceable" and "uncontested" until the Commission suspended it. *See Sutton,* at 529. Under *Clifford,* the status quo ante is with the $49 million rate increase in effect. *See Clifford,* at 814.

Other jurisdictions follow the same rule. An excellent statement of the rule and its rationale was set forth in

---

[4]RCW 81.04.180 is virtually identical to RCW 80.04.180, but applies to agency orders for transportation companies.

*Department of Pub. Utils. v. New Eng. Tel. & Tel. Co.,
supra.* In that case the state utility agency nullified a
$15 million telephone rate increase. The Massachusetts
Supreme Judicial Court statutorily suspended the agency's
order. On remand the agency argued that the court's sus-
pension required a return to the status quo before the rate
increase was effective. The court rejected the argument.

> *If it were not for the department's statutory power to
> regulate rates the company would have had the full
> right to promulgate and put into effect the $15,000,000
> rates filed April 21, 1948. . . . This court, acting under
> the statute, decreed a stay of the order of the depart-
> ment. This rendered the entire order ineffective pen-
> dente lite, both that part which disallowed the
> $15,000,000 rates and that part which ordered lower
> rates in substitution therefor. The result was to remove
> the only bar which had theretofore prevented the
> $15,000,000 rates from taking effect and those rates took
> effect at once pendente lite.* The schedules of those rates
> have at all times remained on file with the department,
> and satisfy the statutory requirement of filed schedules.
> The company is rightfully charging its customers those
> rates, and until the final decision of this court as to the
> right of the company to maintain them the customers are
> protected by the bond.

(Italics ours.) *Department of Pub. Utils.,* 325 Mass. at 289–
90. *See also Brewer v. General Tel. Co.,* 283 Ala. 465, 468–
69, 218 So. 2d 276 (1969); *Alabama Pub. Serv. Comm'n v.
Alabama Power Co.,* 213 Ala. 374, 104 So. 814 (1925); *Utah
Power & Light Co. v. Idaho Pub. Utils. Comm'n,* 107 Idaho
47, 685 P.2d 276 (1984); *Mountain States Tel. & Tel. Co. v.
Jones,* 75 Idaho 78, 267 P.2d 634 (1954); *Public Serv.
Comm'n v. Indianapolis Rys.,* 225 Ind. 30, 72 N.E.2d 434
(1947); *Southwestern Bell Tel. Co. v. State Corp. Comm'n,
supra. But see Mountain States Tel. & Tel. Co. v. Public
Utils. Comm'n,* 176 Colo. 457, 491 P.2d 582 (1971). The
statutory scheme in Massachusetts and other states is simi-
lar to that in Washington.[5] The rate increase is effective

---

[5] A number of states have statutes similar to Washington's. Ala. Code §§ 37-1–

unless the Commission acts. The Commission, therefore, "contests" the increase. *See Sutton,* at 529. Thus, the proper measuring point is with the $49.3 million rate increase in place. The court committed no error by allowing an $8.3 million interim increase.

■ A third perspective on the Superior Court's action yields the same result. The interim rate increase is not ratemaking, but the creation of a pool of funds during the appeal period. Those funds will be returned to consumers, with interest, if the appeal fails. If GTNW is successful on the merits, it is entitled to these funds but would be unable to recoup them retroactively. Washington law allows an appellate court to grant interim relief to ensure the effectiveness of the review process. *See* RAP 8.3; *Washington Fed'n of State Employees, Coun. 28 v. State,* 99 Wn.2d 878, 883, 665 P.2d 1337 (1983) (temporary injunction pursuant to RAP 8.3 is "to prevent destruction of the fruits of a successful appeal"). *See also In re Koome,* 82 Wn.2d 816, 514 P.2d 520 (1973); *Shamley v. Olympia,* 47 Wn.2d 124, 286 P.2d 702 (1955). Preservation of the fruits of a successful appeal is the only apparent reason for the statute's existence. The majority rule recognizes the trial court's authority to grant interim relief in a utility commission rate case, whether by statute or as part of the court's equitable powers. *See Brewer v. General Tel. Co., supra; Utah Power*

124, 37–1–126; Ark. Stat. Ann. § 73–229.1; Cal. Pub. Util. Code § 1762–65; Hawaii Rev. Stat. § 269–16(f); Idaho Code Ann. § 61–635–37; Ill. Rev. Stat. ch. 111⅔, § 75; Miss. Code Ann. § 77–3–69; N.C. Gen. Stat. § 62–95; Ohio Rev. Code Ann. § 4903.16; Or. Rev. Stat. § 756.590; S.C. Code Ann. § 58–5–340; Tenn. Code Ann. § 4–5–322(c); Tex. Rev. Civ. Stat. Ann. art. 1446(c); Va. Code § 56–234; W. Va. Code § 24–5–1; Wis. Stat. Ann. §§ 296.43, 551.61, 817.11. Curiously, few courts of record have interpreted this statute. Those that have, without exception, have held that the court has the power to allow an interim rate increase during the appeal period. *See also Brewer v. General Tel. Co.,* 283 Ala. 465, 218 So. 2d 276 (1969); *Alabama Pub. Serv. Comm'n v. Alabama Power Co.,* 213 Ala. 374, 104 So. 814 (1925); *Utah Power & Light Co. v. Idaho Pub. Utils. Comm'n,* 107 Idaho 47, 685 P.2d 276 (1984); *Mountain States Tel. & Tel. Co. v. Jones,* 75 Idaho 78, 267 P.2d 634 (1954); *Public Serv. Comm'n v. Indianapolis Rys.,* 225 Ind. 30, 72 N.E.2d 434 (1947); *Southwestern Bell Tel. Co. v. State Corp. Comm'n,* 226 Kan. 234, 597 P.2d 633 (1979).

& *Light Co. v. Idaho Pub. Utils. Comm'n, supra; Mountain States Tel. & Tel. Co. v. Jones, supra; Southwestern Bell Tel. Co. v. State Corp. Comm'n, supra; Michigan Consol. Gas Co. v. Public Serv. Comm'n,* 389 Mich. 624, 209 N.W.2d 210 (1973). The Superior Court acted properly in allowing the interim rate increase.

The second issue is whether the Superior Court abused its discretion by staying the Commission's order and finding "great or irreparable" damage to GTNW.

To resolve this issue, we first must determine the elements of RCW 80.04.180. A supersedeas order may issue only if the superior court:

1. Provides 3 days' notice and a hearing on the requested interim relief;

2. Relies on evidence before it to find that, without interim relief, the petitioner will suffer (a) great or (b) irreparable damage;

3. Specifies the nature of that damage in its order;

4. Receives a bond or similar security from the petitioner for all potential damages resulting from the suspension.

The Commission contends that the supersedeas order resembles an equitable injunction. Injunctions require proof of a likelihood of success on the merits. The Commission reasons that the supersedeas order therefore requires proof of a likelihood of success on the merits. *See Mountain States Tel. & Tel. Co. v. Public Utils. Comm'n, supra* at 463–64; *Southwestern Bell Tel. Co. v. Public Util. Comm'n,* 571 S.W.2d 503, 506 (Tex. 1978).

■ A likelihood of "success on the merits", as a prerequisite showing, is not a requirement in this case. The supersedeas order is governed by statute, not by the requirements for an equitable injunction. *See Tyler Pipe Indus., Inc. v. Department of Rev.,* 96 Wn.2d 785, 791–92, 638 P.2d 1213 (1982); *Southwestern Bell Tel. Co. v. State Corp. Comm'n, supra.* The statute mentions nothing about the establishment of a probability of success on the merits. The expression of one statutory requirement mandates the exclusion of all omitted requirements. *E.g., Dominick v.*

*Christensen,* 87 Wn.2d 25, 26, 548 P.2d 541 (1976); *Stahl v. UW,* 39 Wn. App. 50, 55, 691 P.2d 972 (1984). Moreover, a stay order is not identical to an injunction. *In re Koome, supra* at 819. Thus, the cases the Commission cites are inapposite. In those cases, the courts did not consider supersedeas orders pursuant to a statute like RCW 80.04-.180. *See, e.g., Commonwealth ex rel. Stephens v. South Cent. Bell Tel. Co.,* 545 S.W.2d 927, 931 (Ky. 1976) (statute allowed injunction only if rates were confiscatory); *Mountain States Tel. & Tel. Co. v. Public Utils. Comm'n, supra* (common law injunction sought).

The Commission argues that the trial judge improperly applied the "great or irreparable damage" standard. The GTNW affidavit merely stated the obvious: the harm was great because it was $8.3 million, and was irreparable because of the prohibition against retroactive rate collection. The Commission contends that utility companies will be entitled to a supersedeas stay whenever the utility is granted a fraction of its rate request.

We share the Commission's concern about abuse of the statute. A reading of the statute as a whole does not indicate that the Legislature intended a utility to have a right to a supersedeas order whenever it received less than its requested increase and decided to appeal. We believe such a reading would lead to an absurd result. A statute must be read to avoid absurd results. *Bellevue Fire Fighters Local 1604 v. Bellevue,* 100 Wn.2d 748, 751, 675 P.2d 592 (1984); *Standing v. Department of Labor & Indus.,* 92 Wn.2d 463, 473–74, 598 P.2d 725 (1979); *Newby v. Gerry,* 38 Wn. App. 812, 814, 690 P.2d 603 (1984).

Moreover, if the utility company can establish irreparability merely on a showing that it cannot recover the rates retroactively, the concomitant legislative concern for "greatness" is effectively eliminated from the statute. No matter how insignificant the loss, the utility would meet the damage requirement. We do not adopt such an interpretation. A statute must be construed to effectuate all of its provisions. *Kasper v. Edmonds,* 69 Wn.2d 799, 803–04, 420

P.2d 346 (1966).

Because irreparability can be met so easily by utilities that appeal, we hold that a showing of irreparability alone is insufficient to qualify for interim relief. The utility company petitioner also must show that the loss will be material and considerable: (1) substantial in absolute terms or (2) significant to the company given the circumstances.

When the superior court entertains a request for interim relief, it should balance a combination of the following factors in its analysis of the "greatness" requirement:

1. The nature of the damage, RCW 80.04.180;

2. The size of the damage in absolute terms, *Department of Pub. Utils. v. New Eng. Tel. & Tel. Co.,* 325 Mass. 281, 90 N.E.2d 328 (1950);

3. The certainty that the damage will occur, *Southwestern Bell Tel. Co. v. State Corp. Comm'n, supra;*

4. The effect that the damage will have on the petitioner, *Alaska Pub. Utils. Comm'n v. Greater Anchorage Area Borough,* 534 P.2d 549, 554 (Alaska 1975);

5. The petitioner's ability to recover from or minimize the danger;

6. Any potential harm to nonparties, *e.g.,* utility customers, *cf. State ex rel. Pac. Inland Tariff Bur. v. Clifford,* 46 Wn.2d 807, 818, 285 P.2d 569 (1955);

7. Other factors that may be unique to the case.

The trial court has great discretion, which should be exercised with restraint, to apply any or all of these factors to reach its decision. RCW 80.04.180.

Turning to the facts of this case, we are mindful of the broad discretion granted to the superior court. RCW 80.04-.180. Reversal is proper only when the trial court's decision is manifestly unreasonable, arbitrary or untenable. *Washington Fed'n of State Employees, Coun. 28 v. State, supra* at 887; *Lenhoff v. Birch Bay Real Estate, Inc.,* 22 Wn. App. 70, 74–75, 587 P.2d 1087 (1978); *Utah Power & Light Co. v. Idaho Pub. Utils. Comm'n,* 107 Idaho 47, 685 P.2d 276 (1984). The Superior Court could determine whether to issue the order only on the evidence before it. RCW 80.04-

.180. The question on appeal, therefore, is whether the lower court's order was manifestly unfair, unreasonable or arbitrary based solely on the uncontroverted affidavit of GTNW's accounting manager.

The Commission argues that the affidavit was conclusory and afforded inadequate support for the court's order. The Commission saw no need or basis for disputing the affidavit, and no compulsion to offer controverting evidence.

We disagree. The Commission could have offered a variety of evidence to show that the loss would not have been "great." For example, it could have shown that (1) the loss was speculative, (2) GTNW still could earn a profitable rate of return without the interim increase, (3) the amount requested represented a minor fraction of GTNW's total revenues or earnings, or (4) GTNW's past financial performance indicated that it could absorb the interim loss without affecting its ability to compete, operate or raise capital. *Cf., e.g., Public Serv. Comm'n v. Indianapolis Rys.,* *supra* at 44. In short, the Commission failed to present any evidence that might put GTNW's potential loss in a more vulnerable perspective. On the evidence in the record, we are unable to find an abuse of discretion in the lower court's conclusion that an annual loss of $8.3 million was "great."

The Commission contends that the trial court should have considered the potential damage to customers forced to pay the higher interim rates. Some customers will move away or discontinue service before the appeal is resolved. They likely will not receive the refund that GTNW will be required to pay if it loses. Thus, some customers may be damaged slightly but irreparably.

The Commission, however, failed to present evidence of possible customer damage in superior court. The court, therefore, could not have relied on it in making its decision. RCW 80.04.180. *See Alaska Pub. Utils. Comm'n,* at 556. Second, the trial court may in its discretion consider irreparable damage to third parties. See discussion, *supra.* However, no statutory language mandates such consideration.

*See Clifford,* at 818. *Cf. Ohio Oil Co. v. Conway,* 279 U.S. 813, 815, 73 L. Ed. 972, 49 S. Ct. 256 (1929); *Alaska Pub. Utils. Comm'n,* at 554. The lower court committed no error in this regard.

The Commission also challenges the sufficiency of the security, GTNW's promise to refund to consumers the interim rate increase, with interest, if its appeal fails. RCW 80.04.180 grants broad discretion to determine the proper security:

> The court may, *in addition to or in lieu of the bond herein provided for, require such other or further security* for the payment of such excess charges or damages *as it may deem proper.*

(Italics ours.) A reviewing court only will reverse a discretionary ruling if the decision is manifestly unfair, unreasonable or untenable. *Washington Fed'n of State Employees, Coun. 28 v. State, supra* at 887; *Lenhoff,* at 74–75.

The Commission did not present evidence to the lower court of the alleged insufficiency of the security underlying the obligation of the company. The only evidence in the record is GTNW's promise to repay. Nothing in the record suggests that GTNW will be unable or unwilling to refund the increase, or that the refund method will be inadequate. On the evidence before us, we find the trial judge's decision was not manifestly unfair, untenable or unreasonable.

The order is affirmed.

DOLLIVER, C.J., UTTER, PEARSON, and DURHAM, JJ., and JAMES, J. Pro Tem., concur.

GOODLOE, J. (dissenting)—In the fall of 1982, General Telephone Company of the Northwest (GTNW) sought to increase its revenues by $49,272,000. The Washington Utilities and Transportation Commission devoted 10 days of hearings delving into the merits of the proposal and 2 days of hearings for the taking of public testimony. This process produced nearly 2,000 pages of testimony and 116 exhibits, most of which were technical in nature. The testimony of

18 expert witnesses was presented and each party was given the opportunity to present full argument addressing the issues in the proceeding.

After these extensive hearings, the Commission concluded that the proposed increase would produce unjust, unreasonable, and excessive rates and accordingly rejected the increase. However, it authorized GTNW to file tariff revisions designed to produce additional gross annual revenues not to exceed $4,816,665. GTNW, dissatisfied with the Commission's order, sought judicial review. .

A King County Superior Court judge, after holding a hearing on a single day and relying solely on an affidavit by GTNW's general accounting manager, effectively negated the Commission's finding that any increase over $4.8 million would be unjust, unreasonable, and excessive by entering a supersedeas allowing GTNW to charge its customers an additional $8 million annually pending the outcome of the appeal. Because the trial court's order negates the presumption that the Commission's findings are correct and fails to return the situation to the status quo ante, I dissent.

I

The findings and conclusions of the Commission are prima facie correct. The burden of proof is upon the one attacking those findings to demonstrate that they are unlawful, unsupported by the evidence, arbitrary, or capricious. *Cole v. State Utils. & Transp. Comm'n,* 79 Wn.2d 302, 485 P.2d 71 (1971); *Black Ball Freight Serv., Inc. v. State Utils. & Transp. Comm'n,* 74 Wn.2d 871, 447 P.2d 597 (1968); *Northern Pac. Transp. Co. v. State Utils. & Transp. Comm'n,* 69 Wn.2d 472, 418 P.2d 735 (1966). This is especially true where, as here, the issues involved are so complex and where so much effort and time were devoted to the Commission's conclusions. *Cf. Cole v. State Utils. & Transp.. Comm'n, supra.*

The majority's holding condones the trial court's disregard of the presumption that the Commission's findings

that GTNW's proposed rates were unjust, unreasonable, and excessive are correct; instead, the majority affirms the trial court's order which finds that GTNW would suffer great and irreparable harm. I disagree because there is no evidence that shows that GTNW would suffer great and irreparable harm. The only thing the trial court had before it was GTNW's general accounting manager's statement that "GTNW will suffer great and irreparable harm if the court does not stay the contested portions . . . because GTNW cannot retroactively bill its customers for revenues lost during the pendency of this appeal." Clerk's Papers, at 73. I feel that this statement is an insufficient basis for a trial court to grant a supersedeas order under RCW 80.04-.180. This self–serving statement is inadequate to rebut the presumption that the Commission's findings are correct. GTNW is simply stating that it will suffer great and irreparable harm because it would have collected extra rates if the Commission had granted its request in the first place. In my view, a utility, having the burden of proof, should have to establish that the Commission erred in its determination and thus there would be a reasonable probability that the utility would succeed on appeal. *See Mountain States Tel. & Tel. Co. v. Public Utils. Comm'n,* 176 Colo. 457, 491 P.2d 582 (1971); *Commonwealth ex rel. Stephens v. South Cent. Bell Tel. Co.,* 545 S.W.2d 927 (Ky. 1976). This, and not a conclusory statement made by one of its employees, is necessary for a utility to show that it would suffer great or irreparable harm. The majority concedes as much by stating that the trial court should consider "[t]he certainty that the damage will occur". Majority opinion, at 472. The only way to consider the certainty that the damage will occur is to determine the likelihood that the petitioner will be ultimately successful. Damage will only occur if petitioner is successful; if petitioner fails, no damage will occur.

The majority asserts that this court should not impose a requirement that one who seeks a supersedeas show that he will likely win an appeal because no such requirement is in

the statute. *See* RCW 80.04.180. It states the rule that the expression of one statutory requirement mandates exclusion of all omitted requirements. *Dominick v. Christensen,* 87 Wn.2d 25, 548 P.2d 541 (1976). Yet it goes on to violate the very rule it espouses. It holds that showing irreparable harm alone is insufficient; yet the statute specifically states that irreparable harm by itself is a sufficient basis for a trial court to grant a supersedeas order. ("[I]f a supersedeas is granted the order granting the same shall contain a specific finding . . . that great *or* irreparable damage would otherwise result to the petitioner". (Italics mine.) RCW 80.04-.180.) The majority cannot have it both ways. It cannot state that this court must not impose the requirement that a petitioner show likelihood of success because the statute does not contain such a requirement and then hold that irreparable and great harm must both be shown when the statute contains no such requirement.

## II

The majority asserts that the supersedeas does nothing more than restore the parties' position to the status quo ante. If this were so, I would agree that the order was permissible. The order, however, fails to achieve the claimed result.

The status quo ante is "the last actual, peaceable, noncontested condition which preceded the pending controversy", *State ex rel. Pay Less Drug Stores v. Sutton,* 2 Wn.2d 523, 529, 98 P.2d 680 (1940) (quoting 1 J. High, *Injunctions* § 5a, at 10 (4th ed. 1905)). The last peaceable, noncontested condition in the present case was the time prior to GTNW filing tariffs to increase its revenues by $49 million. It was not, as the majority asserts, the period after the tariffs were filed. The tariffs were what started this controversy. The Commission, 19 days after the last tariff was filed, contested them by issuing an order suspending them. Thus, the only order the trial court should have imposed was one which returned the rates to the levels charged before the new tariffs were filed. This would have

maintained the status quo which is the purpose of a supersedeas. *In re Koome,* 82 Wn.2d 816, 514 P.2d 520 (1973).

Contrary to the majority's assertion, this court did not define status quo in *State ex rel. Pac. Inland Tariff Bur. v. Clifford,* 46 Wn.2d 807, 285 P.2d 569 (1955). In *Clifford,* the public service commission granted the railroad's request to reduce some of their rates. A trial court entered a supersedeas staying the commission's order. The trial court later dissolved its supersedeas thus upholding the commission's order allowing the railroads to reduce their rates. This court never stated that this returned the situation to the status quo ante. The definition of status quo ante—last peaceful, noncontested situation—was never mentioned by the court.

## CONCLUSION

A change in the status quo of utility rates on the basis of a conclusory affidavit is unjustifiable. In my view, it is elemental that a trial court should have before it a substantial basis for granting any stay which would place upon the public the burden of higher public utility rates, when such higher rates have been rejected by an agency with the technical expertise needed to set rates. The majority, in contrast, condones such action and, in fact, encourages it by its decision. From this time, whenever a public utility is not granted its full rate increase request it has an incentive to contest the denial. It has absolutely nothing to lose. It can collect the full rate requested until the appeal is final. While the public utility loses nothing, the consumers' losses are substantial. They must pay a rate which the Commission, after extensive hearings, has found to be unjust; unreasonable, and excessive.

BRACHTENBACH and DORE, JJ., concur with GOODLOE, J.

Reconsideration denied November 19, 1985.